COLORADO COURT OF APPEALS                              **2017COA21**

Court of Appeals No. 16CA0249
Industrial Claim Appeals Office of the State of Colorado
W.C. No. 84-1545878

Dami Hospitality, LLC,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Division of
Workers' Compensation,

Respondents.

ORDER SET ASIDE AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE WEBB
Dunn and Davidson*, JJ., concur

Announced February 23, 2017

Law Offices of Daniel T. Goodwin, Daniel T. Goodwin, Caroline R. Kert, Paige
Orgel, Broomfield, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Cynthia H. Coffman, Attorney General, Emmy A. Langley, Assistant Attorney
General, Denver, Colorado, for Respondent Division of Workers' Compensation

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1    Is a fine of $841,200 imposed by the Division of Workers' Compensation (the division) on a small employer for having failed over several years to maintain workers' compensation insurance excessive under the Eighth Amendment?[1]  On the particular facts presented, which include a failure to perform the required fact-specific constitutional analysis, we answer this novel question "yes."

¶ 2    The employer, Dami Hospitality, LLC, appeals the fine as unconstitutional, challenging the underlying statute both facially and as applied; as contrary to other provisions of the Workers' Compensation Act of Colorado, sections 8-40-101 to 8-47-209, C.R.S. 2016 (the Act); and as a procedural due process violation.

¶ 3    We uphold the facial constitutionality of section 8-43-409, C.R.S. 2016, the statute underlying the fine.  But on an as-applied basis, we conclude that because the Director of the division (Director) failed to apply the excessive fine factors adopted under the Eighth Amendment to the particular facts that Dami presented,

---

[1] Because the wording of Colorado Constitution article II, section 20 is identical, we do not address it separately.

the fine must be set aside as excessive. We reject Dami's remaining contentions.

¶ 4    Therefore, we set aside the decision of the Industrial Claim Appeals Office (Panel) affirming the Director's decision and remand the case to the Panel with directions to order the Director to reconsider imposing a fine calculated according to this opinion.

## I.  Background and Procedural History

¶ 5    Dami operates a motel in Denver, Colorado. For a period in 2006, Dami failed to carry workers' compensation insurance as required by section 8-43-409. It was fined approximately $1200 for that violation, paid the fine, and obtained the necessary insurance.

¶ 6    In 2014, the division notified Dami that it was again without workers' compensation insurance and had been for periods during 2006 and 2007, as well as from September 2010 through the date of the division's notice. The Director's "Notice to Show Compliance" advised Dami that within twenty days it had to answer an attached questionnaire, had to submit documents establishing coverage, and could "request a prehearing conference on the issue of default." Dami admits that it received this notice on June 28, 2014, but denies having received a notice the division said had been sent four

2

months earlier.  Although Dami obtained the necessary insurance by July 9, 2014, it neither submitted a response to the Notice to Show Compliance nor requested a prehearing conference.[2]

¶ 7    Information provided by the division's coverage enforcement unit — which Dami does not contest — showed that Dami had been without coverage from August 10, 2006, through June 8, 2007, and again from September 12, 2010, through July 9, 2014.  On this basis, the Director fined Dami from $250 to $400 per day, through September 18, 2006.  From September 19, 2006, through June 8, 2007, and from September 12, 2010, through July 9, 2014, Dami was fined $500 per day.  The Director calculated the fine based on the formula adopted by the division under section 8-43-409(1)(b)(II) in Department of Labor & Employment Rule 3-6, 7 Code Colo. Regs. 1101-3 (Rule 3-6), discussed in Part III.B below.

---

[2] Section 8-43-409, C.R.S. 2016, requires the Director to notify an employer "of the opportunity to request a prehearing conference on the issue of default."  However, the statute does not define "default."  Such a request must be made within twenty days of the notice.  And an employer is not entitled to a hearing as a matter of right.  Rather, "*if necessary*, the [D]irector *may* set the issue of the employer's default for hearing."  § 8-43-409(1) (emphasis added).  The statute is also silent whether the division may request a hearing or the Director may hold one sua sponte.

¶ 8    Dami's owner, Soon Pak, sent a letter to the Director captioned "Petition to Review," asking the Director to reconsider the fine. The Director treated the letter as a petition to review his findings of fact, conclusions of law, and order.

¶ 9    In the letter/petition, Ms. Pak explained that she "believed" the insurance policies she obtained for the motel had "included the required coverage." She blamed her insurance agent for the lapse in coverage, asserting that her trust "in insurance professionals to quote and secure . . . competitive workmen's compensation insurance" was "obviously" misplaced. The petition also asked the Director to reduce the penalty because "$842,000 is more that [sic] my business grosses in one year. . . . My payroll each year is less than $50,000 per year. . . . If the penalty stands as presented, I have no choice but to declare personal and business bankruptcy and go out of business."

¶ 10    In a letter that Ms. Pak's insurance agent submitted to the Director, the agent accepted responsibility for the lack of workers' compensation insurance: "I think I feel part of responsibility for this matter that I did not tell about Worker's Compensation and I will be managing my client in the future. . . . Actually she confused

Property Insurance and Worker's Compensation." Later, Dami's counsel filed a brief in support of the petition to review. Attached to the brief was Ms. Pak's affidavit reiterating her reliance on the insurance agent.

¶ 11     In a supplemental order following Dami's petition and brief, the Director again ordered Dami to pay the fine. He found that because of the earlier fine, Dami had been aware of the need to maintain insurance and failure to do so was within its control. As for Dami's asserted inability to pay, the Director concluded that neither section 8-43-409 nor Rule 3-6(D) contains "an exclusion or exemption from incurring and paying a fine based upon a Respondent's financial inability to pay."

¶ 12     On Dami's appeal of the supplemental order, the Panel remanded the case to the Director. It held that the Director had failed to consider the factors set out in *Associated Business Products v. Industrial Claim Appeals Office*, 126 P.3d 323 (Colo. App. 2005), to protect against constitutionally excessive fines or penalties. The Panel summarized those factors as follows:

- the degree of reprehensibility of the defendant's misconduct;

- the disparity between the harm or potential harm suffered and the fine to be assessed; and

- the difference between the fine imposed and the penalties authorized or imposed in comparable cases.

¶ 13　Without taking additional evidence, the Director issued an order on remand.  Still, the Director did not analyze the factors that Dami had presented under *Associated Business Products*.  Instead, he concluded that because Rule 3-6 inherently incorporates these factors, no further consideration was necessary.  Then for the third time, the Director ordered Dami to pay a fine of $841,200.

¶ 14　Again, Dami appealed.  But this time the Panel agreed with the Director's analysis and affirmed the order on remand.  The Panel's decision is now before us.

## II.  Was Dami Deprived of Procedural Due Process?

¶ 15　Although procedural due process is not Dami's primary argument, we begin there because if Dami is correct, the fine must be set aside and the broader constitutional issues would no longer be ripe for decision.  Courts "have a duty to decide constitutional questions when necessary to dispose of the litigation before them.  But they have an equally strong duty to avoid constitutional issues

6

that need not be resolved in order to determine the rights of the parties to the case under consideration." *Cty. Court v. Allen*, 442 U.S. 140, 154 (1979); *see also People v. Montour*, 157 P.3d 489, 503-04 (Colo. 2007) (Under "the doctrine of constitutional avoidance, . . . courts have a duty to interpret a statute in a constitutional manner where the statute is susceptible to a constitutional construction."). However, we discern no due process violation.

¶ 16    On procedural due process grounds, Dami challenges the method by which it was notified that it lacked workers' compensation insurance, explaining "common sense indicates that simple notice by mail is not reasonable." Alternatively, it argues that a hearing should have been held before the fine was imposed. Neither of these assertions provides a basis for setting aside the Panel's order.

¶ 17    The "fundamental requisites of procedural due process are notice and the opportunity to be heard." *Kuhndog, Inc. v. Indus. Claim Appeals Office*, 207 P.3d 949, 950 (Colo. App. 2009).

¶ 18    The Director's Notice to Show Compliance, informing Dami of its "subsequent violation" of section 8-43-409 for failure to carry

workers' compensation insurance, appears to have been mailed to the address the division had on file for Dami. Dami does not point to any evidence in the record that it had ever advised the division of a new mailing address.

¶ 19 More importantly, despite Dami's argument that notice was inadequate, Ms. Pak admitted in her affidavit to the Director that she had received a second notice in June 2014, just four months after the first notice of subsequent violation had been mailed. Dami does not assert that the passage of these four months created constitutional prejudice. And when a party has received actual notice of an agency's action, the party cannot claim a procedural due process violation based on an alleged defect in the method of giving notice. *See Amos v. Aspen Alps 123, LLC*, 2012 CO 46, ¶¶ 1, 20 ("We conclude that when the parties received actual notice which afforded them an opportunity to present their objections and no prejudice resulted, we will not disturb a completed foreclosure sale."); *see also Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995) ("If a party receives actual notice that apprises it of the pendency of the action and affords an opportunity to respond, the due process clause is not offended.").

¶ 20　　Dami's assertion that a hearing should have been held fares no better.  In responding to the Notice to Show Compliance, Dami never asked for a prehearing conference.[3]  Nor did Dami request a remand hearing in its first appeal to the Panel.  And Dami does not offer any supporting authority or legal argument for the assertion that despite its own inaction, a hearing should have been held.

¶ 21　　Instead, Dami argues only that, "reading between the lines," the division failed to follow the Panel's "suggestion" that the Director hold a hearing.  But "[g]iven the dearth of legal grounds offered," we decline to address this issue on its merits.  *Meza v. Indus. Claim Appeals Office*, 2013 COA 71, ¶ 38; *see also Antolovich v. Brown Grp. Retail, Inc.,* 183 P.3d 582, 604 (Colo. App. 2007) (declining to address "underdeveloped arguments").

¶ 22　　For these reasons, we conclude that Dami has not articulated a cognizable claim for due process violations based on either inadequacy of the notice or failure to hold a hearing.

---

[3] Dami did not contest the wording of the notice below and does not do so on appeal.  For that reason, we do not address what "you may request a prehearing conference on the issue of default" would mean to a reasonable person.  Be that as it may, lack of a hearing at which the record could have been more fully developed plagues this appeal.

III.  Was the Fine Imposed on Dami Constitutionally Excessive?

A.  Dami's Excessive Fine Arguments

¶ 23      Dami challenges the $841,200 fine on three grounds.

¶ 24      First, Dami argues that section 8-43-409 is unconstitutional on its face.  According to Dami, the General Assembly's removal of a penalty cap from the statute in 2005, plus the absence of any statutory deadline within which the Director must notify an employer that it is in violation of the mandate to carry workers' compensation insurance, effectively grants the Director "complete discretion regarding the timing of notice and thus the size of the fine."  Dami points out that this lack of any deadline — combined with the Director's formulaic approach in imposing the fine — resulted in a penalty grossly disproportionate both to the fines anticipated by the legislature and to the risk of harm to Dami's employees.

¶ 25      Second, arguing unconstitutionality as applied, Dami asserts that because the Director wrongly deemed the *Associated Business Products* factors for weighing excessive fines incorporated into Rule 3-6, the Director abused his discretion in failing to apply the factors to Dami's particular situation.

¶ 26    Third, Dami argues that the fine is grossly disproportionate both to its ability to pay and to the harm caused by the lack of workers' compensation insurance. It asserts the Director should also have considered its ability to pay when weighing the constitutionality of the fine.

¶ 27    Although we do not discern a facial flaw in the statute, we conclude that its application violated Dami's constitutional protections against excessive fines. In so concluding, we agree with Dami that because the constitutional factors are not sufficiently incorporated into Rule 3-6, the Director abused his discretion in failing to consider facts specific to Dami — including Dami's ability to pay — when he reimposed the fine after the Panel had directed him to address the *Associated Business Products* factors.

B. Statutory and Regulatory Provisions at Issue

¶ 28    Dami was fined under section 8-43-409, which requires the Director to order the violating employer "to cease and desist immediately from continuing its business operations during the period such default continues," or

> (b) For every day that the employer fails or has failed to insure or to keep the insurance required by articles 40 to 47 of this title in

11

force, allows or has allowed the insurance to lapse, or fails or has failed to effect a renewal of such coverage, impose a fine of:

. . . .

(II) Not less than two hundred fifty dollars or more than five hundred dollars for a second and any subsequent violation.

§ 8-43-409(1).

¶ 29    To implement this provision, the division adopted Rule 3-6. As pertinent here, the rule provides:

3-6   FINES FOR DEFAULTING EMPLOYER

(A)  Following the Director's determination that an employer has failed to obtain the required insurance or has failed to keep such insurance in force or has allowed the insurance to lapse or has failed to renew such insurance, the Director will impose fines on the defaulting employer and/or will compel the employer to cease and desist its business operations.

. . . .

(D) For the Director's finding of an employer's second and all subsequent defaults in its insurance obligations, daily fines from $250/day up to $500/day for each day of default will be assessed in accordance with the following schedule of fines until the employer complies with the requirements of the Workers' Compensation Act regarding insurance or until further order of the Director:

12

| Class VII | 1-20 Days | $250/Day |
| Class VIII | 21-25 Days | $260/Day |
| Class IX | 26-30 Days | $280/Day |
| Class X | 31-35 Days | $300/Day |
| Class XI | 36-40 Days | $400/Day |
| Class XII | 41 Days | $500/Day |

## C. Facial Challenge to Section 8-43-409

¶ 30    "A law is void for vagueness where its prohibitions are not clearly defined." *People v. Baer*, 973 P.2d 1225, 1233 (Colo. 1999). "Vague laws are unconstitutional and 'offend due process because they (1) fail to give fair notice of the conduct prohibited, and (2) do not supply adequate standards for those who apply them in order to prevent arbitrary and discriminatory enforcement.'" *Denver Health & Hosp. Auth. v. City of Arvada*, 2016 COA 12, ¶ 14 (quoting *Baer*, 973 P.2d at 1233) (*cert. granted in part* Sept. 12, 2016).  Even so, a "facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). And at least in Colorado, "[t]he party challenging the facial constitutionality of a statute has the burden of showing the statute

is unconstitutional beyond a reasonable doubt." *Hinojos-Mendoza v. People*, 169 P.3d 662, 668 (Colo. 2007).[4]

¶ 31    First, we reject Dami's assertion that the absence of a penalty cap renders the statute unconstitutional.[5]

¶ 32    For purposes of the Eighth Amendment, "[t]he notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law." *Austin v. United States*, 509 U.S. 602, 610 (1993) (quoting *United States v. Halper*, 490 U.S. 435, 447-48 (1989)).

¶ 33    Numerous sentencing cases have held that the absence of a maximum cap does not invalidate a statute.  For example,

> [s]uch a statute is not subject to the attack that it is void because it is vague and indefinite.  There are many laws such as this upon the statute books of the Federal Government, as well as of the various states, fixing a minimum sentence and leaving it within the power of the court to fix the maximum sentences.  In every instance the validity of such statutes has been upheld.

---

[4] In *Tabor Foundation v. Regional Trans. Dist.*, 2016 COA 102, our supreme court has granted certiorari to consider this standard. 16SC639, 2017 WL 280826 (Colo. Jan. 23, 2017).

[5] Section 8-43-409 was amended in 2005 to remove the cap that had prohibited any penalty from "exceed[ing] the annual cost of the insurance premium that would have been charged for such employer."  Ch. 49, sec. 1, § 8-43-409, 2005 Colo. Sess. Laws 199.

*Binkley v. Hunter*, 170 F.2d 848, 849 (10th Cir. 1948); *see also*

*United States v. Kuck*, 573 F.2d 25, 26 (10th Cir. 1978) ("A

sentencing statute is not unconstitutional because of failure to

provide a maximum term.").

¶ 34     In contrast, Dami has not cited authority holding a statute

that imposes a fine or penalty facially unconstitutional for lack of a

cap.  Nor have we found any such authority in Colorado.

¶ 35     Looking outside of Colorado, the notion that the absence of a

maximum fine renders a statute facially unconstitutional

"represents the clear minority rule on the issue.  In fact, the

majority of courts considering this issue have upheld the

constitutionality of statutes which set a minimum fine or

punishment but which do not prescribe a maximum fine or

punishment."  *State v. Taylor*, 70 S.W.3d 717, 721 (Tenn. 2002);

*see, e.g., United States v. Hayes*, 589 F.2d 811, 825 (5th Cir. 1979)

("While the statute does not provide for a specific maximum

sentence in situations of life imprisonment for the principal, failure

to provide a clearer maximum possible sentence does not render the

statute constitutionally infirm.  Leaving the determination of

maximum sentences to the court is not uncommon.") (citation omitted); *Ex parte Robinson*, 474 So. 2d 685, 686 (Ala. 1985); *State v. Nelson*, 11 A.2d 856, 862 (Conn. 1940); *Mannon v. State*, 788 S.W.2d 315, 322 (Mo. Ct. App. 1990) ("A statute which fixes a minimum punishment but provides no maximum term is neither constitutionally invalid nor void because of indefiniteness.").

¶ 36    Second, we reject Dami's assertion that the absence of a deadline for division action against an employer lacking insurance — which allows the fine to ratchet up — renders the statute facially unconstitutional.  Again, Dami has not offered any cases supporting its position.  To the contrary, substantial authority suggests the opposite.

¶ 37    To begin, the Supreme Court has upheld a court's authority to impose daily fines under a statute that lacked both a cap and a deadline for notifying the offending parties of accumulating fines. *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 243 (1975) (remanding for recalculation of daily fines under the Clayton and Federal Trade Commission Acts).

¶ 38    Likewise under Colorado law, daily penalties that accumulated for continuing violations have been upheld.  *See Crowell v. Indus.*

*Claim Appeals Office*, 2012 COA 30, ¶ 15 ("[W]hen there is ongoing conduct, the continuation of the penalty is mandatory, rather than discretionary."); *Pueblo Sch. Dist. No. 70 v. Toth*, 924 P.2d 1094, 1100 (Colo. App. 1996) (mandating imposition of the penalty at a "daily rate" where violation was continuing).

¶ 39    Some lower federal courts have taken the same approach.  In *Center for Biological Diversity v. Marina Point Development Associates*, 434 F. Supp. 2d 789 (C.D. Cal. 2006), for example, the defendants were found to have been in violation of the Clean Water Act from at least October 2002 to 2006.  Because they were subject to daily penalties of $27,500 to $32,500 over the course of their violations, "the maximum penalty" could have been as high as "$15,445,000."  *Id.* at 799.  The court imposed a penalty of $2500 for each day of violation "from October 7, 2002 to April 16, 2004," totaling $1,312,500.  *Id.* at 800.  Similarly, in *Honey v. Dignity Health*, 27 F. Supp. 3d 1113 (D. Nev. 2014), daily penalties were imposed against an employer for violating the notice provision in the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. §§ 1161-1169 (2012).  The court noted that it "ha[d] discretion to impose a penalty and to set its amount, subject only to

17

a $110 per day statutorily set maximum." *Honey*, 27 F. Supp. 3d at 1124.

¶ 40    None of the courts in these cases pondered whether the fines should be tempered because the underlying statutes did not require the regulating authorities to provide timely notice of a violation. Instead, at least as best we can determine, like Rome burning as Nero fiddled, fines mounted while the regulators said nothing.[6]

¶ 41    Given all this, we conclude that Dami has not met its burden of showing that section 8-43-409 is facially unconstitutional beyond a reasonable doubt. Even so, our inquiry does not end, as the statute's application in this case could still be unconstitutional.

D. As-Applied Constitutional Challenges to Fines

¶ 42    Dami's as-applied challenge to section 8-43-409 differs from its facial challenge to the statute.

---

[6] To be sure, Dami might distinguish some of these cases on the basis that the party fined could not dispute its knowledge of the conduct triggering the fine. For example, *Crowell v. Industrial Claim Appeals Office*, 2012 COA 30, involved the employer's affirmative action. In contrast, Dami maintains that it did not know the insurance coverage had lapsed. But Dami's alleged ignorance can be addressed under reprehensibility, one of the factors from *Associated Business Products v. Industrial Claim Appeals Office*, 126 P.3d 323 (Colo. App. 2005), as discussed in Part III.D.4.a below.

> A plaintiff bringing an "as-applied" challenge contends that the statute would be unconstitutional under the circumstances in which the plaintiff has acted or proposes to act. If a statute is held unconstitutional "as applied," the statute may not be applied in the future in a similar context, but the statute is not rendered completely inoperative.

*Sanger v. Dennis,* 148 P.3d 404, 410 (Colo. App. 2006). "For as-applied constitutional challenges, the question is whether the challenging party can establish that the statute is unconstitutional 'under the circumstances in which the plaintiff has acted or proposes to act.'" *Qwest Servs. Corp. v. Blood,* 252 P.3d 1071, 1085 (Colo. 2011) (quoting *Developmental Pathways v. Ritter,* 178 P.3d 524, 534 (Colo. 2008)). Yet again, "the burden of establishing the unconstitutionality of a statute, as applied, [is] beyond a reasonable doubt." *People v. Gutierrez,* 622 P.2d 547, 555 (Colo. 1981).

¶ 43    Statutory penalties, like those assessed under section 8-43-409, are subject to the constitutional prohibition against excessive fines. *See Associated Bus. Prods.,* 126 P.3d at 326; *Wolford v. Pinnacol Assurance,* 81 P.3d 1079, 1084 (Colo. App. 2003), *rev'd on other grounds,* 107 P.3d 947 (Colo. 2005). The Eighth Amendment provides that "[e]xcessive bail shall not be

required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

¶ 44 As a division of this court noted, the Supreme Court first applied this provision to "civil cases where the government seeks, at least in part, to punish a party" in 1993, when it announced *Austin v. United States*, 509 U.S. 602 (1993). *Toth*, 924 P.2d at 1099-1100. In *Austin*, the Supreme Court applied the Eighth Amendment to an in rem civil forfeiture, noting that "the question is not . . . whether forfeiture . . . is civil or criminal, but rather whether it is punishment." *Austin*, 509 U.S. at 610. After *Austin*, fines assessed for non-criminal statutory violations have been subject to the Eighth Amendment's protections against excessive fines.

¶ 45 More recently, Colorado courts have applied the constitutionally excessive limitation to civil fines. *See Associated Bus. Prods.*, 126 P.3d at 326; *Boulder Cty. Apartment Ass'n v. City of Boulder*, 97 P.3d 332, 338 (Colo. App. 2004). But exactly when is a fine excessive?

¶ 46 The Supreme Court has held that a civil fine is excessive "if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). Likewise, a

division of this court has said that a penalty "is excessive if the amount is so disproportionate to a defendants [sic] circumstances that there can be no realistic expectation that the defendant will be able to pay it." *Boulder Cty. Apartment Ass'n*, 97 P.3d at 338.

¶ 47 This much is clear: the principle of proportionality encompassed in the constitutional protection against excessive fines "is that the punishment should fit the crime." *Id.* at 337. Yet, "[i]f this principle were as easy of application as it is of statement, we should have little difficulty; but, like many another simple and plain principle, its application to concrete facts is sometimes very difficult." *Lovejoy v. Denver & Rio Grande R.R. Co.*, 59 Colo. 222, 229, 146 P. 263, 265 (1915). Taking up that task, we start with the standard of review.

## 1. Standard of Review

¶ 48 The party challenging a fine bears the "the burden of proving the fine is 'grossly disproportionate.'" *Associated Bus. Prods.*, 126 P.3d at 326 (quoting *Toth*, 924 P.2d at 1100). But deciding whether that burden has been met implicates conflicting standards of appellate review.

¶ 49    On the one hand, "when a punitive damages award is reviewed for excessiveness under the Due Process Clause and the Eighth Amendment, a de novo standard of review should be applied." *Id.* at 325. And as discussed in Part III.D.4 below, courts have applied de novo the punitive damages criteria in deciding whether a civil fine or penalty is excessive.

¶ 50    On the other hand, "[a] trial court enjoys considerable discretion in assessing a penalty." *Colo. Dep't of Pub. Health & Env't v. Bethell*, 60 P.3d 779, 787 (Colo. App. 2002). Similarly, "[a]n [administrative law judge] has discretion to determine the amount of the penalty, provided that the amount does not exceed the legislatively enacted penalty range." *Crowell*, ¶ 17. And as explained in the prior subsection, the statute before us no longer caps the fine.

¶ 51    Likewise, as to statutes underlying civil penalties, "legislatures have extremely broad discretion in setting the range of permissible punishments for statutorily enumerated offenses and . . . judicial decisions operating within the legislatively enacted guidelines are typically reviewed for abuse of discretion." *Associated Bus. Prods.*, 126 P.3d at 325 (citing *Cooper Indus., Inc. v. Leatherman Tool Grp.,*

22

*Inc.*, 532 U.S. 424, 432 (2001)). And here, because the rule that the Director applied tracks the statute, his decision enjoys the same protection.

¶ 52    True, this case does not involve a punitive damages award, as in *Cooper Industries*. But like the challenge in *Associated Business Products*, Dami asks us to examine the excessiveness of a "legislatively enacted penalt[y]," which is also reviewed de novo. *Associated Bus. Prods.*, 126 P.3d at 325.

¶ 53    An abuse of discretion occurs when the fact finder enters an order that is unsupported by the evidence or misapplies or is contrary to the law. *Heinicke v. Indus. Claim Appeals Office*, 197 P.3d 220, 222 (Colo. App. 2008). As has been so often stated, discretion is abused when the decision "is manifestly arbitrary, unreasonable, unfair, or misapplies the law." *Patterson v. BP Am. Prod. Co.*, 2015 COA 28, ¶ 67.

¶ 54    *Associated Business Products* recognized — but did not resolve — the tension between de novo review and review for an abuse of discretion. And where a constitutional interest is in play, sometimes the latter bleeds into the former. *Cf. People v. Dunham*, 2016 COA 73, ¶ 13 ("Ordinarily, we review a defendant's preserved

23

contention that the trial court erred in limiting cross-examination of a witness for an abuse of discretion. But where, as in this case, a defendant contends that the trial court so excessively limited his cross-examination of a witness as to violate the Confrontation Clause, *see* U.S. Const. amend. VI, we review that contention de novo.") (citations omitted). In any event, we avoid reconciling this tension because ultimately we conclude that the Director abused his discretion by misapplying the law.

## 2. Constitutional Protections Afforded Corporations

¶ 55 In its answer brief, the division preliminarily questions whether the Eighth Amendment's excessive fines protections even apply to corporations. The answer to this question is unresolved in Colorado and unclear elsewhere. We conclude that corporations enjoy these protections.

¶ 56 To begin, the cases relied on by the division, as well as the opinions of several other courts, have assumed that corporations are entitled to the Eighth Amendment's protections. *See, e.g.*, *United States v. Pilgrim Mkt. Corp.*, 944 F.2d 14, 22 (1st Cir. 1991) ("We will assume for purposes of our discussion that the eighth amendment proscription against excessive fines applies to

corporations, although this is a very tenuous assumption."); *United States v. Seher*, 686 F. Supp. 2d 1323, 1327 n.2 (N.D. Ga. 2010) ("The Court assumes that the corporate Defendants are entitled to raise an Eighth Amendment challenge. Whether the protections of the Eighth Amendment extend to a corporation is an open question that remains unaddressed by this Circuit or the Supreme Court."), *aff'd sub nom. United States v. Chaplin's, Inc.*, 646 F.3d 846, 851 n.15 (11th Cir. 2011) ("Our analysis assumes, but does not hold, that the Eighth Amendment applies to corporations. The Supreme Court has never held that this amendment applies to corporations.").[7]

¶ 57　　But despite these cases, we decline to reach the as-applied Eighth Amendment question by the expedient of assuming without deciding the preliminary constitutional question of whether Dami is entitled to constitutional protection against excessive fines. Doing so would be contrary to the doctrine of constitutional avoidance. *Cf. Allen*, 442 U.S. at 154; *Montour*, 157 P.3d at 503-04. For the

---

[7] Other courts have ignored the question altogether. *See United States v. Bucuvalas*, 970 F.2d 937, 946 (1st Cir. 1992) ("We bypass the unresolved question whether a corporation may assert an Eighth Amendment claim."), *abrogated on other grounds by Cleveland v. United States*, 531 U.S. 12 (2000).

following reasons, we conclude that despite Dami's corporate status, it enjoys the Eighth Amendment's protection.

¶ 58     Other divisions of this court that have examined the constitutionality of fines imposed against corporate entities are silent on this issue.  *See Associated Bus. Prods.*, 126 P.3d at 325-27; *Boulder Cty. Apartment Ass'n*, 97 P.3d at 337-38.  The opinions do not indicate whether the issue was raised.  But since these cases were decided, the Supreme Court has extended other constitutional protections to corporations.  This tidal shift in constitutional law leads us to resolve the issue for Dami.

¶ 59     In *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), the Supreme Court extended First Amendment protection for political speech to corporations.  *Id.* at 342-43.  The Court "rejected the argument that political speech of corporations or other associations should be treated differently under the First Amendment simply because such associations are not 'natural persons.'"  *Id.* at 343 (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978)).  Declining to follow prior precedent that had permitted limitations on corporate speech, *Citizens United* held that "the Government may not suppress political speech on the

basis of the speaker's corporate identity. No sufficient governmental interest justifies limits on the political speech of nonprofit or for-profit corporations." *Id.* at 365.

¶ 60 Like the First Amendment, the Second Amendment, and the Fourth Amendment, the wording of the Eighth Amendment is not restricted to "natural persons." *See Second Amendment Arms v. City of Chicago,* 135 F. Supp. 3d 743, 761 (N.D. Ill. 2015) (corporations may assert both First and Fourth Amendment challenges); *Geneva Coll. v. Sebelius,* 929 F. Supp. 2d 402, 428 (W.D. Pa. 2013) ("[A] for-profit, secular corporation has standing to assert the religious exercise claims of its owners in certain circumstances . . . .").

¶ 61 In sum, we are unable to discern a reason for limiting the Eighth Amendment protection against excessive fines to natural persons. After all, such fines adversely impact both corporations and natural persons, and the financial condition of some persons may be stronger than that of some corporations. Nor does the division present one. Thus, we conclude that Dami's status as a corporation does not deprive it of Eighth Amendment protection.

### 3. Director's Discretion

¶ 62     In his supplemental order, the Director assumed that section 8-43-409 and Rule 3-6 require a formulaic calculation of any fine. Notwithstanding Dami's claimed inability to pay such a large fine, the Director concluded that neither the statute nor the rule permitted consideration of an employer's economic situation and that fines imposed under the statute and rule were "not discretionary."

¶ 63     The Panel rejected the Director's view in part. In its final order, the Panel observed that Rule 3-6 mandates that fines "will be assessed in accordance with the following schedule of fines until the employer complies with the requirements of the Workers' Compensation Act regarding insurance *or until further order of the Director.*" (Emphasis added.) Embracing this language, the Panel held that Rule 3-6 grants the Director authority to modify a fine which would otherwise be "calculated solely on the basis of the number of days involved."

¶ 64     In its brief, the division acknowledges but does not contest the Panel's interpretation. Instead, the division argues that the Director used his discretion "to determine which factor to prioritize"

28

and to consider "mitigating and aggravating factors" before reimposing Dami's fine in the supplemental order.

¶ 65     We give "due deference to the interpretation of the statute adopted by the Panel as the agency charged with its enforcement." *Berg v. Indus. Claim Appeals Office*, 128 P.3d 270, 273 (Colo. App. 2005). In general, "an administrative agency's interpretation of its own regulations is generally entitled to great weight and should not be disturbed on review unless plainly erroneous or inconsistent with such regulations." *Jiminez v. Indus. Claim Appeals Office*, 51 P.3d 1090, 1093 (Colo. App. 2002). "The Panel's interpretation will therefore be set aside only 'if it is inconsistent with the clear language of the statute or with the legislative intent.'" *Zerba v. Dillon Cos.*, 2012 COA 78, ¶ 37 (quoting *Support, Inc. v. Indus. Claim Appeals Office*, 968 P.2d 174, 175 (Colo. App. 1998)).

¶ 66     We conclude that the Panel's interpretation of the regulatory language is reasonable. *See id.*; *Support, Inc.*, 968 P.2d at 175. Thus, the Director can modify a penalty under section 8-43-409 and Rule 3-6, although no reason for doing so is identified in the rule or was addressed by the Panel.

¶ 67    At the same time, we disagree that Rule 3-6 adequately incorporates the three factors articulated in *Associated Business Products*.  On remand, the Director concluded — and the Panel agreed — that Rule 3-6 sufficiently incorporated these factors.  He explained as follows:

- as to the first factor, Rule 3-6 reflects reprehensibility because the fine increases for a second violation;

- as to the second factor, because the risk to employees increases the longer an employer is without insurance, the rule recognizes the potential magnitude of the harm by increasing the amount of the fine based on how long an employer remains uninsured; and

- as to the third factor, by providing a uniform formula for fining all noncomplaint employers, the rule assures uniformity in its application while penalizing employers with longer periods of noncoverage more heavily.

(Those factors are discussed fully in the following subsection of this opinion.)

¶ 68    But these observations go only so far.  For example, an employer's reasons for a second lapse of coverage may affect its

reprehensibility. The duration of that lapse will often be determined by how much time passes between the lapse beginning and notice of noncompliance from the division. And this timing dimension — not addressed in either the statute or any regulation that has been called to our attention — could erode uniformity.[8]

¶ 69 As addressed in the following subsection, to pass constitutional muster the factors that the Panel ordered the Director to consider must be applied on a case-by-case basis, with due consideration given to each employer's unique situation. For this reason, we reject the Director's and the Panel's contrary interpretations. *See Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 160 (2001) (rejecting doctrine of agency deference "[w]here an administrative interpretation of a statute would raise serious constitutional problems").[9]

---

[8] Disuniformity is not the only potential problem resulting from the absence of a statutory or regulatory limitation of fines based on the failure to afford an employer prompt notice of noncompliance. Lack of such a limitation also invites future disputes over excessive fines.
[9] The Panel's interpretation also suffers from lack of consistency. If Rule 3-6 already and adequately encompasses the *Associated Business Products* factors, as the Panel ultimately held after remand, then the Panel had no reason to remand to the Director for him to consider those factors. *See, e.g., Turney v. Civil Serv. Comm'n*, 222 P.3d 343, 352 (Colo. App. 2009) ("Although courts

¶ 70    With these conclusions in mind, we turn to the propriety and

proportionality of the fine imposed on Dami.

### 4.  Applying the *Associated Business Products* Factors in Weighing Whether a Fine Is Grossly Disproportionate and Thus Constitutionally Excessive

¶ 71    Because the constitutional line demarcating an excessive fine

is "inherently imprecise" and "not marked by a mathematical

formula," determining whether a fine is "grossly disproportionate"

can be difficult.  *Associated Bus. Prods.*, 126 P.3d at 326 (first

quoting *Cooper Indus.*, 532 U.S. at 425; then quoting *Toth*, 924 P.2d

at 1100).  But cases addressing the constitutional limitations on

punitive damages awards — from which the three *Associated*

*Business Products* factors evolved — provide context for doing so.

¶ 72    In *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 580,

583 (1996), the Supreme Court first articulated factors that should

be considered when weighing the "reasonableness of a punitive

damages award."  In deciding whether the constitutional line for an

excessive fine "has been crossed," the Court later condensed these

factors by instructing lower courts to "focus[] on the same three

extend deference to an agency's interpretation of its own rules, they
are not bound by it, particularly where the agency's interpretation
is not uniform or consistent.").

criteria: (1) the degree of the defendant's reprehensibility or culpability; (2) the relationship between the penalty and the harm to the victim caused by the defendant's actions; and (3) the sanctions imposed in other cases for comparable misconduct." *Cooper Indus.*, 532 U.S. at 425.

¶ 73     Although *Gore* and *Cooper* addressed only punitive damages, the factors have been more broadly applied. As pertinent here, a statutory damage award could be "devastatingly large . . . out of all reasonable proportion to the actual harm suffered," which could be a "sufficiently serious case [that] the due process clause might be invoked." *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003); *see also St. Louis, Iron Mountain & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919) (Although states have wide latitude in setting penalties for statutory violations, states cannot impose penalties "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable."). Not surprisingly, *Associated Business Products*, 126 P.3d at 326, adopted the *Gore* factors and applied them to statutory penalties and civil fines.[10]

---

[10] *Associated Business Products*, 126 P.3d at 326, quoted the recitation of the factors in *Cooper Industries*, 532 U.S. at 425;

¶ 74    Dami asserts that the Director did not adequately apply these factors in his supplemental decision.  True, the Director discussed the factors in his order on remand, although only after having been directed to do so by the Panel.  But recall the Director determined that because the factors were incorporated into section 8-43-409 and Rule 3-6, no further fact-specific analysis was required.  In our view, this approach sells the necessary constitutional inquiry short.

¶ 75    When the *Gore/Cooper Industries* analysis has been applied by divisions of this court and by courts in other jurisdictions, the factors were examined in the context of the fined party's actual behavior.  No less is required here.

¶ 76    Consider *Associated Business Products*, 126 P.3d at 324, where an employer and its insurer were fined $24,900 for delaying or failing to pay $107.79 in medical bills incurred by an injured worker.  A division of this court upheld the fine.  In applying the *Gore* factors, it noted that the employer's and its insurer's actions met the reprehensibility factor because they had (1) previously been fined for failing to pay bills; (2) showed a pattern of delaying

---

*Cooper Industries* summarized and compiled the factors articulated in *Gore*, 517 U.S. at 575, 580, 583.

payment of the worker's bills; (3) failed to adhere to orders requiring them to pay for attendant care services, medical supplies, and prescriptions; and (4) disobeyed an order requiring them to identify the claims adjuster handling the file and provide a complete copy of the claims file and payment records. *Id.* at 326. The division went on to compare the fine to the range of penalties allowed under the statute and found it to be "well below the maximum" daily fine. *Id.* at 327.

¶ 77     Next consider *Blood*, 252 P.3d at 1094, where the Colorado Supreme Court applied the *Gore* factors to decide whether an $18 million punitive damages award assessed against Qwest was "excessive and disproportionate." A jury had awarded the punitive damages to a lineman who suffered grave injuries when the pole he was climbing — owned by Qwest — collapsed and fell to the ground. The court examined Qwest's behavior de novo. It noted that Qwest (1) lacked "a periodic pole inspection program," which demonstrated a "conscious indifference to the safety of linemen"; (2) had failed to implement such an inspection program for five decades; and (3) should have foreseen the plaintiff's injuries caused by the collapse of a pole due to rot as the natural result of never inspecting its

poles. *Id.* at 1095-97. Based on these particular facts, the court affirmed the award.

¶ 78    Similarly, courts in other jurisdictions have applied the *Gore/Cooper Industries* factors using a fact-specific analysis. *See, e.g., Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1065-73 (10th Cir. 2016) (reducing a punitive damages award against an apartment management company for tenant's carbon monoxide poisoning injuries on grounds that, under *Gore* factors, the amount was excessive when compared to other carbon monoxide poisoning cases); *In re Exxon Valdez*, 270 F.3d 1215, 1242 (9th Cir. 2001) (rejecting a $5 billion punitive damages award against Exxon in part because "there was no violence, no intentional spilling of oil (as in a 'midnight dumping' case), and no executive trickery to hide or facilitate the spill"); *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 128 Cal. Rptr. 2d 463, 475-81 (Cal. Ct. App. 2002) (upholding a civil penalty because it did not violate the *Gore* factors); *In re Marriage of Miller*, 860 N.E.2d 519, 523-24 (Ill. App. Ct. 2006) (comparing the $1,172,100 penalty imposed against an employer for failure to garnish the wages of an employee who owed child support against the maximum fine for the criminal offense of failing to pay

child support and concluding that the penalty was excessive), *rev'd*, 879 N.E.2d 292 (Ill. 2007) (reconsidering the factors in light of the evidence and reinstating the $1,172,100 penalty).

¶ 79    We consider these decisions well reasoned and apply them here.  Thus, when Dami challenged the fine as constitutionally excessive, the Director should have weighed the facts specific to Dami.  By failing to do so, the Director misapplied the law and abused his discretion.  *See Patterson,* ¶ 6; *Heinicke,* 197 P.3d at 222.

¶ 80    Even so, could we set aside the Panel's final order upholding the fine unless the Director's failure to make a fact-specific inquiry harmed Dami?  After all, as the Director recognized, the formula in Rule 3-6 gives limited voice to the *Gore* factors.

¶ 81    The record contains Dami's written assertions and Ms. Pak's affidavit.[11]  In his supplemental order and order on remand, the

---

[11] As indicated, Ms. Pak's affidavit explained that she relied on her insurance agent to obtain and maintain all necessary insurance coverages, but she asserted inability to pay the fine only in her separate letter to the division, which served as Dami's initial petition to review.  Of course, appellate courts may only consider assertions that are supported by record evidence, *McCall v. Meyers,* 94 P.3d 1271, 1272 (Colo. App. 2004), and mere arguments of counsel must be disregarded.  *Lucero v. People,* 166 Colo. 233, 237,

Director accepted these assertions as true. The division did not

controvert any of this information before the Panel, nor does it do so

on appeal. And "a legal conclusion drawn by the Panel from

undisputed facts is a matter for the appellate court." *Coates, Reid*

*& Waldron v. Vigil*, 856 P.2d 850, 856 (Colo. 1993). So, we apply

the *Gore/Cooper Industries* factors to those undisputed facts as

follows.

### a. Reprehensibility

¶ 82    In a punitive damages case, our supreme court has adopted

the Supreme Court's criteria for assessing reprehensibility:

> The [United States Supreme] Court has
> analyzed the *Gore* reprehensibility guidepost
> according to the following five criteria:
>
>> the harm caused was physical as
>> opposed to economic; the tortious
>> conduct evinced an indifference to
>> or a reckless disregard of the health
>> or safety of others; the target of the
>> conduct had financial vulnerability;
>> the conduct involved repeated
>> actions or was an isolated incident;
>> and the harm was the result of
>> intentional malice, trickery, or
>> deceit, or mere accident.

---

442 P.2d 820, 822 (1968). But exactly what must be included in
such a petition to make a sufficient record is not resolved by
statute, regulation, or case law.

> "The existence of any one of these [criterion] weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect."

*Blood*, 252 P.3d at 1094-95 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)).

¶ 83     Dami said that it was unaware of the lapses of workers' compensation insurance. The Director found that Dami should have known about the lapses, but relied only on the prior violation in doing so. Instead, the uncontroverted evidence provided in Ms. Pak's affidavit indicates she trusted her insurance agent to maintain the necessary coverages. In turn, the agent agreed that Ms. Pak was likely confused, that she did not realize she lacked the insurance, and that he "did not tell" her Dami lacked workers' compensation insurance.

¶ 84     These facts put Dami at the low end of the reprehensibility scale. By any fair reading of *Blood*, Dami did not act with "indifference to or reckless disregard for the safety of others," nor did it act with intentional malice, trickery or deceit.

### b. Disparity Between Actual or Potential Harm to Employees and the Fine

¶ 85    Dami submitted its unemployment records showing that it had fewer than ten employees and its annual payroll was less than $50,000. Dami also said that a workers' compensation claim has never been filed against it. The division could easily have controverted the latter statement, but has not done so. This information is significant in two ways.

¶ 86    First, because no claims have been filed against Dami, the lack of workers' compensation insurance did not actually harm any of Dami's employees.

¶ 87    Second, as for potential harm, Dami has few employees. *Cf. Blood*, 252 P.3d at 1079, 1098 (noting that Qwest's failure to inspect any of its 157,000 poles for five decades endangered "linemen and the public"). And Dami's lengthy history with no reported claims also suggests that the risk of injury to those few employees is low.

¶ 88    Yes, as the Director observed, "an employer that continues to operate without insurance for a lengthy period of time creates an ever-growing risk that a worker will be injured and be forced to rely

solely on the employer to pay for the injury." Because the record does not include any evidence of particular risks arising from the nature of Dami's operations, however, this observation paints an incomplete picture. Of course, all employees working for an employer without workers' compensation coverage are at financial risk should an injury occur and the employer be unable or unwilling to compensate the injured worker. But the magnitude of that risk depends on the likelihood of severe or fatal injury.

¶ 89 As to that likelihood, the Director observed only that housekeeping and maintenance work involved potentially heavy lifting, which could lead to injury. But he did not refer to industry-specific data from Colorado. Nor have we found any.

¶ 90 To fill this void, we have taken judicial notice of federal government reports. *Campbell v. Manchester Bd. of Sch. Dirs.*, 641 A.2d 352, 359 n.7 (Vt. 1994) ("The Court in *Nyquist* took judicial notice of enrollment data from publicly available government reports, exactly the type of information we have used here. *See Committee for Public Education & Religious Liberty v. Nyquist*, 413 U.S. 756, 768 n. 23 (1973)."). According to the United States Department of Labor's most recent reports, the "leisure and

41

hospitality" industry ranks below the midpoint of other industries for incidence of nonfatal workplace injuries and well below that point for fatal injuries.[12]

### c. Comparable Penalties

¶ 91    The record is barren of any evidence comparing Dami's fine against fines imposed on other uninsured employers.  We cannot fault Dami for this void because it would lack access to such information.  Nor has the division provided it.

¶ 92    Instead, Dami identifies a 2005 "State Fiscal Impact Statement" related to the amendment of section 8-43-409, which estimated that the total fines collected from all violators of the statute in 2006-2007 would be "$200,000."  Further, Dami points out that the General Assembly anticipated the average fine would be $28,500, and that its fine exceeds this estimate by 2900%.[13]

---

[12] The reports are released by the Bureau of Labor Statistics and can be found at Bureau of Labor Statistics, *Nonfatal Occupational Injuries and Illnesses Requiring Days Away from Work, 2015* (Nov. 10, 2016), https://perma.cc/G4QQ-FM7V (nonfatal injuries); and Bureau of Labor Statistics, *Census of Fatal Occupational Injuries Summary, 2015* (Dec. 16, 2016), https://perma.cc/Q7DF-XK7U (fatal injuries).
[13] Dami's brief refers to a January 18, 2005, "State Fiscal Impact Statement" and attaches a "Summary of Legislation under State Revenues."  The Summary does not state from where it derived the

¶ 93     Even so, according to the Director, the fines imposed on different employers must be similar because all of them were imposed solely by applying the formula in Rule 3-6.  This assertion, even if accurate, accounts for only one-half of the process.  Although we have rejected Dami's vagueness argument, we agree that the more time that lapses before the division gives notice to an uninsured employer, the more the fine will have mounted.  Due to this variable, significantly disparate fines could be imposed, despite the Director's formulaic approach.

5. Ability to Pay

¶ 94     Dami next argues that the Director should have considered its ability to pay before imposing the penalty.  As indicated, the Director did not do so, asserting lack of statutory or regulatory authority.

¶ 95     No Colorado case that Dami has cited, or that we have found, requires that ability to pay be considered before imposing a civil fine.  However, Colorado courts consider ability to pay before imposing criminal fines.  *See, e.g.*, *People v. Stafford*, 93 P.3d 572,

---

figures.  In any event, the division does not contest the accuracy of this information.

43

574 (Colo. App. 2004) ("[A] sentencing court must consider the defendant's financial status in determining the appropriate amount of any fine to be levied."); *People v. Pourat,* 100 P.3d 503, 507 (Colo. App. 2004) ("[I]n imposing a fine, a trial court must consider a defendant's ability to pay.").

¶ 96    As well, the United States Supreme Court has held that a defendant's ability to pay must be considered before a monetary civil contempt sanction may be imposed.  *See United States v. United Mine Workers of Am.,* 330 U.S. 258, 304 (1947) ("It is a corollary of the above principles that a court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed as a punishment or as a means of securing future compliance, consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant.").

¶ 97    Other states have required that ability to pay be considered before imposing a civil penalty.  *See Parisi v. Broward Cty.,* 769 So. 2d 359, 366 (Fla. 2000) ("[I]n imposing both criminal fines or coercive civil contempt fines, the court must consider the financial resources of the contemnor in setting the amount of the fine.").

¶ 98    In a case remarkably similar to this one, the Minnesota Court of Appeals listed ability to pay as one of the factors to be considered before a fine could be imposed against an employer for failing to carry workers' compensation insurance.  *See State Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 555 N.W.2d 908, 913 (Minn. Ct. App. 1996) (citing *State v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 896-97 (Minn. Ct. App. 1992)), *modified*, 558 N.W.2d 480 (Minn. 1997).  *Wintz Parcel Drivers* upheld a penalty against a trucking firm in excess of $1.2 million for failure to carry workers' compensation insurance.  Although the opinion does not say how many employees Wintz had or describe its financial status, the court mentions that Wintz's workers' compensation insurance premium for the uncovered period would likely have been over $1 million.  *Id.*[14]

¶ 99    Guided by these authorities, we conclude that ability to pay should be considered when determining whether a penalty imposed against an employer for failure to carry workers' compensation insurance is constitutionally excessive.

---

[14] The record does not contain any comparable information for Dami.

¶ 100    Ms. Pak's letter asserted that Dami cannot afford to pay a fine of $841,200, which would put it — and her — into bankruptcy. The record does not include any contrary information. Nor does the division argue otherwise.

¶ 101    Thus, although the Director did not exercise his statutory power to seek a cease and desist order putting Dami out of business, which Dami could have opposed, the fine indirectly achieved this result. Still, the record does not fully describe Dami's financial condition, such as its net worth. For this reason, we are unable to say whether Dami could pay a reduced fine.

¶ 102    Based on all of these facts, we conclude that the present record shows the $841,200 fine to be excessive. In saying this much, however, we take care to emphasize what we are not saying — that a lower fine against Dami would necessarily also fail a constitutional challenge. To the contrary, the constitutionality of such a fine can be addressed only when that fine has been imposed and any additional record is before us.

## IV. Incorporating Provisions of Section 8-43-304 into Section 8-43-409

¶ 103   Dami next contests the fine by contending that provisions of section 8-43-304, C.R.S. 2016, must be read into section 8-43-409. In particular, Dami focuses on provisions in section 8-43-304 that (1) grant a violator twenty days to cure a violation and thus avoid a penalty, § 8-43-304(4); (2) require a party charging an opponent with a violation to prove by clear and convincing evidence that the violation occurred, § 8-43-304(4); and (3) mandate that a party alleging a violation file a claim within one year of when it knew or reasonably should have known of the alleged violation, § 8-43-304(5).

¶ 104   Based on these provisions, Dami argues that the fine must be set aside because (1) it cured its failure to carry workers' compensation insurance within twenty days; (2) the division did not prove Dami's violation by clear and convincing evidence; and (3) the division did not file its notice of violation within one year of when Dami's violation should reasonably have been discovered.  But Dami's conclusion fails because its premise that the provisions of section 8-43-304 must be read into section 8-43-409 is flawed.

¶ 105    As with any statute, the provisions of the Act must be read

"harmoniously, reconciling conflicts where necessary." *Anderson v.*

*Longmont Toyota, Inc.*, 102 P.3d 323, 327 (Colo. 2004).  But that

general principle does not give a reviewing court license to read

provisions from one statute into a different statute.  To the

contrary, courts are expressly prohibited from reading provisions

into the Act.  *See Kraus v. Artcraft Sign Co.*, 710 P.2d 480, 482

(Colo. 1985) ("We have uniformly held that a court should not read

nonexistent provisions into the Colorado Workmen's Compensation

Act.").

¶ 106    Relying on *Holliday v. Bestop, Inc.*, 23 P.3d 700, 705 (Colo.

2001), Dami argues that nothing in section 8-43-304 prohibits its

provisions from being read into section 8-43-409.  Then Dami

insists that because the limiting phrase in section 8-43-304 — "for

which no penalty has been specifically provided" — only applies to

one of the four different acts giving rise to penalties under that

statute, the other three types of actions leading to penalties may be

read broadly and into section 8-43-409.

¶ 107    *Holliday* held as follows:

> The legislature's use of the disjunctive conjunction "or" in section 8-43-304(1) plainly demarcates four different acts giving rise to penalties. The legislature's use of "or" makes clear that the statute penalizes the person who: (1) "violates any provision of [the Workers' Compensation Act]," (2) "does any act prohibited thereby," (3) "fails or refuses to perform any duty lawfully enjoined within the time prescribed by the director or panel, for which no penalty has been specifically provided," or (4) "fails, neglects, or refuses to obey any lawful order made by the director or panel or any judgment or decree made by any court as provided by said articles."

23 P.3d at 705 (citation omitted) (quoting § 8-43-304(1)).

¶ 108    Thus, *Holliday* does not carry the weight that Dami places on its shoulders. Had the General Assembly intended to incorporate a cure provision, a limitation period, or a clear and convincing burden of proof into section 8-43-409, it would have done so expressly. Because it did not, we are not free to do so by judicial fiat. *See City of Loveland Police Dep't v. Indus. Claim Appeals Office*, 141 P.3d 943, 954-55 (Colo. App. 2006) ("If [the General Assembly] intended to limit death benefits where the death results from mental impairment, we conclude it would have done so expressly.").

¶ 109    For these reasons, we decline to incorporate the provisions of section 8-43-304 into section 8-43-409. Therefore, the Director was

not obligated to credit Dami for curing the violation, was not required to prove by clear and convincing evidence that Dami violated section 8-43-409, and did not have to file notice of Dami's violation within one year of Dami's lapse.

## V. Conclusion

¶ 110 The fine must be set aside because the Director abused his discretion when he failed to apply the *Associated Business Products* factors — derived from *Gore* and *Cooper Industries* — to Dami's specific circumstances. Facts relevant to that application include Dami's ignorance that the required insurance had lapsed. While not mandated by *Gore*, the failure to notify Dami of the lapse for almost half a decade and Dami's ability to pay are also relevant. On remand, the fine may be recalculated, but only after these facts have been weighed.

¶ 111 We conclude that Dami's other contentions — challenging the facial constitutionality of section 8-43-409, seeking to incorporate the provisions of section 8-43-304 into section 8-43-409, and alleging procedural due process violations — do not provide a basis for setting aside the Panel's final order affirming the Director's remand order.

¶ 112    The Panel's order is set aside and the case is remanded to the Panel with directions to return it to the Director for recalculation of Dami's fine in accordance with this opinion.

JUDGE DUNN and JUDGE DAVIDSON concur.