**BOULDER COUNTY APARTMENT ASSOCIATION, a non-profit Colorado corporation; Robert Greene, Rudy Harburg, and Brian Field, Boulder residents who own and manage residential properties within the City of Boulder, Plaintiffs–Appellants,**

v.

**CITY OF BOULDER, Colorado, Defendant–Appellee.**

No. 03CA0746.

Colorado Court of Appeals, Div. I.

April 8, 2004.

Certiorari Denied Sept. 7, 2004.

§ 24–51–1105, C.R.S.2003.

Daniel H. Isreal, Boulder, Colorado, for Plaintiffs–Appellants.

Jerry P. Gordon, City Attorney, Boulder, Colorado, for Defendant–Appellee.

Opinion by Judge TAUBMAN.

In this action involving the powers of a home rule city, plaintiffs, Boulder County Apartment Association (BCAA), Robert Greene, Rudy Harburg, and Brian Field (collectively landlords), appeal from the trial court's judgment dismissing their claims against defendant, City of Boulder. We affirm.

Plaintiff, BCAA, is an association of property owners and managers leasing residential property in Boulder, Colorado; the named plaintiffs are individual property owners who lease residential property in Boulder, Colorado.

In an effort to regulate problems caused by large numbers of students and others needing rental housing in Boulder, the city has enacted occupancy limitation ordinances. Because those who operate rental housing often benefit economically from leasing their property to as many people per unit as possible, the city's ordinances make both landlords and tenants liable for violations of the occupancy limitations.

In 2002, the landlords brought this action seeking a declaratory judgment that certain zoning provisions of the Boulder Code restricting the number of persons occupying a rental unit and the accompanying criminal sanctions were void because they were preempted by state law.

The landlords alleged that they had been fined, or were subject to fines pursuant to the city's over-occupancy ordinances. They argued that (1) §§ 5–2–7(a), 9–3.2–8, and 9–10–1(f), B.R.C.2003, unlawfully made landlords strictly liable for the over-occupancy of their rental units without requiring the city to show they knew or consented to the violation; and (2) §§ 9–10–1(e) and 9–10–4(b), B.R.C.2003, unlawfully imposed criminal penalties because they permitted excessive fines to be imposed.

The city filed a motion to dismiss for failure to state a claim upon which relief can be granted. It argued that because Boulder is a home rule city, and state laws do not directly conflict with its zoning ordinances, the ordinances are not preempted by state law.

The trial court concluded that the ordinances did not conflict with state law and granted the city's motion to dismiss. This appeal followed.

## I. Mootness

After the landlords filed their notice of appeal, the city significantly amended the challenged ordinances. The city argues that these amendments render this declaratory judgment action moot because they eliminate strict liability and excessive fines. The land-

lords requested at oral argument that we should review their arguments in relation to the ordinances, *as amended.* However, they argue the action is not moot because, like the prior ordinances, the amended ordinances do not require the city to prove a landlord had knowledge of the over-occupancy and continue to subject landlords to excessive fines. We agree that the action is not moot.

■ Ordinarily, a court exercises its judicial power only over an actual controversy between adverse parties. When the relief granted by the court would not have a practical effect upon an existing controversy, an issue becomes moot, and a court normally refrains from addressing it. *Trinidad Sch. Dist. No. 1 v. Lopez,* 963 P.2d 1095 (Colo. 1998).

■ Further, when parties seek declaratory relief, there must be an actual controversy. *Bd. of County Commrs. v. Park County Sportsmen's Ranch, LLP,* 45 P.3d 693 (Colo. 2002). The Uniform Declaratory Judgments Law (UDJL), § 13–51–101, et seq., C.R.S. 2003, describes the purpose of the declaratory judgment action as follows: "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Section 13–51–102, C.R.S.2003; *see also* C.R.C.P. 57. The UDJL further provides: "Any person ... whose rights, status, or other legal relations are affected by a ... municipal ordinance ... may have determined any question of construction or validity arising under the ... ordinance." Section 13–51–106, C.R.S.2003.

Here, as owners and lessors of residential property located in the city, the landlords have rights that are affected by the city's ordinances.

Section 9–10–1(f), B.R.C.2003, provides: "The owner, tenant, and occupant of a structure or land and the agents of each of them are jointly and severally liable for any violation of this title with respect to such structure or land." This language was before the trial court.

Section 9–3.2–8(a), B.R.C.2003, limits the number of unrelated persons who may occupy a rental unit. During the pendency of this appeal, § 9–3.2–8 was amended to add § 9–3.2–8(h), B.R.C.2003. Subsection (h) provides a specific affirmative defense to an alleged violation of § 9–3.2–8(a) by any landlord or property manager who does not reside at the leased premises, if the defendant can show, inter alia, no actual knowledge of the over-occupancy.

The landlords complained in the trial court that § 9–3.2–8 was contrary to state laws because it provided for a landlord's liability without requiring the city to prove the landlord's knowledge of the over-occupancy.

Although the amended ordinance allows a nonresident landlord to show "no actual knowledge" as an affirmative defense, the ordinance still provides for strict liability because it does not require the city to prove a culpable mental state for landlords whose rented units violate the occupancy limitations.

Additionally, the affirmative defense is available only to nonresident landlords, and the city has not shown that all the BCAA members are nonresident landlords. Thus, some BCAA members may still be subject to strict liability, without the benefit of the affirmative defense.

Similarly, § 9–10–1(e) provides: "each day during which illegal ... occupancy ... continues, constitutes a separate offense." Section 9–10–4(b) provides for a fine of up to $2,000 per violation.

Section 9–10–4, B.R.C.2003, was amended to add subsection (c), which provides guidelines for applying fines imposed for violations of § 9–3.2–8. Subsection (c) also limits the total fine to no more than the maximum fine that might be imposed for fifteen separate violations, unless the court finds that special aggravating circumstances exist.

In the trial court, the landlords complained that these ordinances permitted excessive daily fines to be imposed. Here, although the amended ordinances establish a maximum fine, absent aggravating circumstances, the landlords maintain that a $2,000 fine for a single violation may still be imposed and is still excessive. Further, the landlords maintain that any fine compounded daily must be authorized by state statute to be valid. Be-

cause the amended ordinance still provides for a fine of up to $2,000 for a single violation and for the daily compounding of fines, we conclude the landlords' arguments are not mooted by the amendment adding § 9–10–4(c).

Therefore, because the declaratory judgment remedy is to be liberally construed, and because the landlords' real property rights and legal relations with their tenants remain affected by the validity of the challenged ordinances, as amended, we conclude that the case is not moot. *See Bd. of County Commrs v. Park County Sportsmen's Ranch, LLP, supra.*

■ Nevertheless, the city argues that we should not review issues arising under the amended ordinances because they have not first been determined by a trial court. However, the issues presented here are purely ones of law; there are no facts in dispute; therefore, we are in as good a posture as the trial court to address them. *Springer v. City & County of Denver,* 13 P.3d 794 (Colo.2000). Therefore, in the interest of judicial economy, we will exercise our discretion and address those arguments. *See People v. Campbell,* 75 P.3d 1151 (Colo.App.2003).

## II. Preemption by State Law

The landlords argue that the city's ordinances regarding liability for over-occupancy and the accompanying criminal fines are preempted by state law. We disagree.

When reviewing a motion to dismiss under C.R.C.P. 12(b)(5), a court must accept all allegations of material fact as true and view the allegations of the complaint in the light most favorable to the plaintiff. We review a trial court's ruling on a motion to dismiss de novo. *Pub. Serv. Co. v. Van Wyk,* 27 P.3d 377 (Colo.2001).

■ Pursuant to the Colorado Constitution, cities such as Boulder, that have satisfied certain size requirements and adopted a home rule charter, may legislate on matters of local concern, and that legislation will preempt any conflicting state legislation. Colo. Const. art. XX, 6; *City of Northglenn v. Ibarra,* 62 P.3d 151, 156 (Colo.2003).

■ Whether a matter is of local, state, or mixed concern determines whether state or local legislation controls in that area. In matters of local concern, a home rule ordinance supersedes any conflicting state statute. In matters of statewide concern, home rule cities are without power to act unless authorized by the constitution or by state statute. However, where matters are of mixed concern, that is, matters of concern to both home rule cities and the state, home rule ordinances and state statutes may coexist if they do not conflict. *City of Northglenn v. Ibarra, supra.*

### A. Landlord Liability for Over–Occupancy

■ The landlords argue that the ordinance imposing strict liability against them for the over-occupancy of their units involves a matter of statewide concern and is not authorized by the Colorado Constitution or by state statute. We disagree.

Section 5–2–7(a), B.R.C.2003, provides:

The minimum requirement for criminal liability is the performance by a person of conduct that includes an act or the omission to perform an act. If such conduct is all that is required for commission of a particular violation, the violation is one of "strict liability." If a culpable mental state on the part of the actor is required with respect to any material element of a violation, the violation is one of "mental culpability."

As stated above, § 9–3.2–8 provides strict liability for violation of occupancy limitations under the city's zoning ordinances. However, an affirmative defense for nonresident landlords allows them to show that they undertook means to avoid over-occupancy violations, or that they lacked actual knowledge of the over-occupancy. Also, § 9–10–1(f) provides for landlords and tenants to be held jointly and severally liable for violations of § 9–3.2–8.

The parties agree that zoning limitations are a matter of local concern. However, the landlords argue that the level of culpability that must be proven by the city to convict a landlord under these ordinances is a matter of statewide concern. In support of their

argument, they cite to state statutes and case law distinguishing rights of landlords and tenants, establishing a tenant's possessory interest in a rental property, enabling a landlord to terminate a tenancy for substantial violations, imposing tort liability on landlords, and imposing liability on them for wrongfully withholding security deposits. The landlords also cite to general state statutes defining culpable mental states and the purpose of the Colorado Criminal Code.

The landlords further argue that § 13–40–107.5, C.R.S.2003, which allows landlords to evict a tenant for, inter alia, committing a criminal act on leased premises, conflicts with the city's ordinances because it allows a landlord to take action against a tenant for a substantial violation of the lease, whereas the ordinance imposes strict liability for over-occupancy that may violate the lease. However, we perceive no conflict.

To the contrary, § 13–40–107.5 and the city's ordinances appear to be complementary in that they provide mechanisms to deal with lease violations. Significantly, the statute does not compel a landlord to take any action prohibited by the ordinance, and the ordinance does not require the landlord to violate the statute. Further § 9–3.2–8(c) provides an affirmative defense to liability when nonresident landlords show they were unaware of an over-occupancy, and § 13–40–107.5(5)(b)(II), C.R.S.2003, similarly allows a tenant who is unaware of a substantial lease violation to raise an affirmative defense.

The landlords fail to cite any authority that landlord culpability for over-occupancy violations is a matter of statewide concern. To the contrary, the landlords admit in their reply brief, "The City is free to develop any number of schemes to enforce its density rules." It is unreasonable to conclude that a home rule city may enact ordinances regarding matters of purely local concern, but that it may not define liability to enforce the ordinance.

The landlords cite *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30 (Colo.2000), in support of their argument. However, in *Telluride,* the supreme court held that a home rule city's ordinance concerning rent control was a matter of mixed state and local concern because, inter alia, the General Assembly declared that the preclusion of rent control is a matter of statewide concern.

We therefore conclude that the ordinances here address matters of local concern, or, at most, mixed concern. In either event, the ordinances are authorized by the home rule constitutional provision.

Even if the mental culpability of a landlord for violation of a home rule city's ordinance were a matter of mixed concern, both state statutes and city ordinances operate, unless they are in direct conflict. Further, the landlords concede that no direct conflict exists between the city and state criminal schemes. The landlords stated in their reply brief, "[T]here exists no explicit overlap between the operation of Colorado Criminal Code setting forth strict liability and the City's criminal ordinances. There is nothing on the face of the Criminal Code that creates a uniform rule for all criminal defendants in Colorado—only criminal defendants facing state charges."

Colorado's criminal statutes do not conflict with the challenged ordinances here because no Colorado criminal statutes regulate over-occupancy violations. Therefore, we conclude, as did the trial court, that state law does not preempt the city's ordinances, §§ 5–2–7(a), 9–3.2–8, and 9–10–1(f).

The landlords do not contest the validity of the city's ordinances on due process grounds, and we do not address this issue.

### B. Excessive Fine

The landlords also argue that §§ 9–10–1(e) and 9–10–4 are preempted by state law because a $2,000 fine for a single zoning violation is excessive, and fines compounded daily must be authorized by the state. We disagree.

The Eighth Amendment and article II, § 20 of the Colorado Constitution prohibit the imposition of excessive fines. Generally, the principle of proportionality encompassed in the Eighth Amendment is that the punishment should fit the crime. *Close v. People,* 48 P.3d 528 (Colo.2002). Thus, a

fine is excessive if the amount is so disproportionate to a defendants circumstances that there can be no realistic expectation that the defendant will be able to pay it. *People v. Bolt*, 984 P.2d 1181 (Colo.App.1999).

Here, the landlords do not directly appeal fines imposed by the city; however, because they complain of having been fined or being subject to the threat of a fine, the landlords seek a declaration of their rights regarding the validity of these ordinances.

■ To the extent the landlords argue that a $2,000 fine for an individual over-occupancy violation is excessive, we disagree. Contrary to the landlords' contention, § 9–10–4 does not require a $2,000 fine for every violation; it provides for a fine of *up to* $2,000. Section 9–10–4(c), as amended, sets forth factors that the court *must* consider when imposing a fine, such as evidence that a fine would be confiscatory, the seriousness of the violation, the past record of the defendant, the economic circumstances of the defendant, and all mitigating or aggravating factors relevant to the violation. Therefore, we conclude that §§ 9–10–1(e) and 9–10–4, on their face, do not provide an excessive fine for a single violation. *People v. Deroulet*, 48 P.3d 520 (Colo.2002)(principle of proportionality included in the Eighth Amendment is narrow, only forbidding grossly disproportionate sentences).

To the extent the landlords argue that the ordinance provides for excessive fines because the fines may be compounded daily, we disagree. The ordinance has been amended to add § 9–10–4(c), which provides for a maximum fine equal to that imposed for fifteen violations, unless the court finds special aggravating circumstances. Subsection (c) defines "special aggravating circumstances" and provides the court with procedures to follow in determining an appropriate fine. Accordingly, we conclude that these ordinances, as amended, do not provide for an excessive fine.

■ The landlords also argue that daily fines must be authorized by the General Assembly and cite state statutes authorizing daily penalties. However, as stated above, the challenged ordinances legislate matters of local or mixed concern; therefore, local regulation governs this area without the necessity of authorization by the General Assembly. *See City of Northglenn v. Ibarra, supra.* In any event, a home rule city may impose different or greater fines than the state. *See People v. Wade,* 757 P.2d 1074, 1076 (Colo.1988).

Therefore, we conclude, as did the trial court, that §§ 9–10–1(e) and 9–10–4, are not preempted by state law.

The judgment is affirmed.

Judge MARQUEZ and Judge WEBB concur.