The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 14, 2026

## 2026 COA 37

**No. 25CA0110, *Feet Forward v. City of Boulder* — Government — Municipal Law — Camping and Tent Bans; Constitutional Law — Colorado Constitution — Excessive Bail, Fines, or Punishment — Inalienable Rights — Due Process**

A division of the court of appeals considers whether municipal ordinances banning sheltering on public property violate homeless residents' rights under the Colorado Constitution to protection from cruel and unusual punishment, to freedom of movement and to use public spaces, and to due process protection against state-created dangers.

The division concludes that the Colorado Constitution's protection against cruel and unusual punishment has not been expanded beyond that provided by the Eighth Amendment. Therefore, applying the United States Supreme Court's interpretation of the Eighth Amendment as guidance, the division

concludes that the ordinances are not cruel and unusual punishments because the ordinances criminalize homeless residents' conduct only, not their status.

Further, the division concludes that the Colorado constitutional right to freedom of movement does not include a fundamental right to shelter on public property. Thus, as the ordinances have a rational relationship to municipal police powers, the ordinances do not violate the right to freedom of movement.

Lastly, the division holds that the ordinances do not violate Colorado's substantive due process protection against state-created danger because the ordinances do not create a danger of harm from a third-party person.

Because the ordinances do not violate the Colorado Constitution, the trial court correctly granted the motion to dismiss the complaint for failure to state a claim. Accordingly, the division affirms the judgment of dismissal.

COLORADO COURT OF APPEALS                            **2026 COA 37**

---

Court of Appeals No. 25CA0110
Boulder County District Court No. 22CV30341
Honorable Robert R. Gunning, Judge

---

Feet Forward - Peer Supportive Services and Outreach d/b/a Feet Forward, a nonprofit organization; Jennifer Shurley; Jordan Whitten; Shawn Rhoades; Mary Faltynski; Eric Budd; and John Carlson,

Plaintiffs-Appellants,

v.

City of Boulder and Maris Herold, Chief of Police for the City of Boulder,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE KUHN
Fox and Sullivan, JJ., concur

Announced May 14, 2026

---

Timothy Macdonald, Emma Mclean-Riggs, Anna I. Kurtz, Denver, Colorado; Newman | McNulty, Andy McNulty, Madeline Leibin, Denver, Colorado; Grata Law and Policy LLC, Daniel D. Williams, Meghan C. Hungate, Boulder, Colorado; Hutchinson Black and Cook, LLC, Ashlyn L. Hare, Boulder, Colorado, for Plaintiffs-Appellants

Teresa Taylor Tate, City Attorney, Luis A. Toro, Deputy City Attorney, Veronique Van Gheem, Deputy City Attorney, Boulder, Colorado; Hall & Evans, L.L.C., Andrew D. Ringel, Denver, Colorado, for Defendants-Appellees

Justin Carpenter, Denver, Colorado, for Amicus Curiae Historians

Nelson Mullins Riley & Scarborough LLP, Blake A. Gansborg, Denver, Colorado; Robert S. Chang, Irvine, California; Kyle C. Barry, Waltham, Massachusetts; Caitlin Glass, Boston, Massachusetts, for Amici Curiae The

State Law Research Initiative and Fred T. Korematsu Center for Law and Equality

Wilmer Cutler Pickering Hale and Dorr LLP, Mary V. Sooter, Denver, Colorado; Wilmer Cutler Pickering Hale and Dorr LLP, Laura E. Powell, Kelley E. Kling, Washington, DC, for Amici Curiae National Homelessness Law Center, National Alliance to End Homelessness, and National Low Income Housing Coalition

Rachel Bender, Robert D. Sheesley, Denver, Colorado, for Amicus Curiae Colorado Municipal League

¶ 1     Boulder's residents without a safe place to rest indoors understandably may seek to shelter on public property. But no matter how sympathetic their plight, these circumstances alone don't create new state constitutional rights.

¶ 2     In this case, defendants, City of Boulder and Maris Herold, Chief of Police for the City of Boulder, respectively enacted and enforced municipal ordinances banning Boulder residents from sheltering on public property. Plaintiffs, Feet Forward - Peer Supportive Services and Outreach d/b/a Feet Forward, a now-dissolved nonprofit corporation; Jennifer Shurley; Jordan Whitten; Shawn Rhoades; Eric Budd; Mary Faltynski; and John Carlson (collectively, Feet Forward), claim the ordinances violate the rights of homeless residents — who they say have no reasonable means for indoor shelter — under the Colorado Constitution's protection against cruel and unusual punishment, right to freedom of movement and to use public spaces, and due process protection against state-created dangers.

¶ 3     We hold that the Colorado Constitution's protection against cruel and unusual punishment mirrors its federal counterpart, the Eighth Amendment. Applying as guidance the United States

1

Supreme Court's interpretation of the Eighth Amendment in *City of Grants Pass v. Johnson*, 603 U.S. 520 (2024), we conclude that the ordinances are not cruel and unusual punishments because they criminalize the act of sheltering on public property, not a homeless resident's status of being homeless without access to indoor shelter.

¶ 4 We further determine that the Colorado Constitution's right to freedom of movement does not entail a fundamental right to shelter on public property. Because there is no such fundamental right, we hold that the ordinances are constitutional because they bear a rational relationship to ensuring access to public property and reducing public health concerns.

¶ 5 Lastly, we conclude that the Colorado Supreme Court in *Henderson v. Gunther*, 931 P.2d 1150 (Colo. 1997), narrowly construed Colorado's substantive due process protection against state-created danger, aligning it with the protections afforded by the Fourteenth Amendment. Under this narrow construction, we hold that the ordinances here do not violate the protection against a state-created danger because the ordinances do not create a harm from a third-party person.

¶ 6    For these reasons, we affirm the trial court's order dismissing the case.

## I.    Background

¶ 7    Boulder enacted two municipal ordinances that prohibit the erection of temporary shelters on public land.  The "Camping or Lodging on Property Without Consent" ordinance states in relevant part,

> (a) No person shall camp within any park, parkway, recreation area, open space, or other city property.
>
> . . . .
>
> (d) For purposes of this section, *camp* means to reside or dwell temporarily in a place, with shelter, and conduct activities of daily living, such as eating or sleeping, in such place.  But the term does not include napping during the day or picnicking.  The term *shelter* includes, without limitation, any cover or protection from the elements other than clothing.  The phrase[ ]*during the day* means from one hour after sunrise until sunset . . . .

Boulder Rev. Code § 5-6-10.  The parties refer to this ordinance as the "Blanket Ban" or the "Camping Ban."  The other ordinance on "Prohibited Items" states,

> (a) No person shall erect or use any tent, net, or other temporary structure for the purpose of shelter or storage of property in a park or

3

recreation area, on any open space land, or on any other public property, unless done pursuant to a written permit or contract from the city manager.

Boulder Rev. Code § 8-3-21. The parties refer to this ordinance as the "Tent Ban." The penalty for violating these ordinances "is a fine of not more than $2,650 per violation, or incarceration for not more than ninety days in jail or by both such fine and incarceration." Boulder Rev. Code § 5-2-4.

¶ 8    Feet Forward sued Boulder, challenging these ordinances as violating the constitutional rights of Boulder's homeless residents who have no means to shelter indoors.[1] Each plaintiff alleges harm through their respective connections to Boulder's homeless community. Feet Forward was a peer-led nonprofit corporation that provided low-barrier, housing-focused peer support and navigation

---

[1] The parties use the terms "homeless," "houseless," and "unhoused" interchangeably, and we do likewise. Feet Forward also notes that the U.S. Department of Housing and Urban Development defines being "[l]iterally [h]omeless" as "lack[ing] a fixed, regular, and adequate nighttime residence, . . . ha[ving] a primary nighttime residence that is a public or private place not meant for human habitation . . . [or] living in a publicly or privately operated shelter designated to provide temporary living arrangements." HUD Exch., *Category 1: Literally Homeless*, https://perma.cc/74MU-SMSE.

services in Boulder.[2]  Shurley, Rhoades, and Whitten are Boulder residents presently experiencing homelessness (homeless plaintiffs). Budd, Faltynski, and Carlson are Boulder taxpayers (taxpayer plaintiffs).[3]

¶ 9    Feet Forward's complaint alleged that Boulder contracts with Boulder Shelter for the Homeless (BSH) to provide sheltering services for homeless residents.[4]  At the time, BSH was the only available shelter for Boulder's homeless population, but BSH did not have enough sheltering services for that entire population — including for emergency overnight shelter during inclement weather.  BSH also placed restrictions on those attempting to

---

[2] After the trial court dismissed the complaint, plaintiff Feet Forward, a nonprofit corporation, filed articles of dissolution with the Colorado Secretary of State.  However, "[a] dissolved nonprofit corporation continues its corporate existence," such that a dissolution doesn't "[p]revent commencement of a proceeding by or against the nonprofit corporation in its entity name" or "suspend a proceeding pending by or against the nonprofit corporation on the effective date of dissolution."  § 7-134-105(1), (3)(d), (3)(e), C.R.S. 2025.

[3] Jennifer Livovich and Lisa Sweeney-Miran are Boulder taxpayers who were originally plaintiffs to the suit but have since withdrawn.

[4] BSH presently goes by the new name All Roads.  *See* All Roads, *Our History*, https://perma.cc/GV3C-6RS9.

access its shelter, including prohibiting emotional support animals, banning couples from sheltering together, and excluding belongings that can't be carried. For these reasons, Feet Forward alleged that some homeless residents could not rely on BSH as a realistic or safe option for indoor shelter.

¶ 10 Feet Forward thus claims that, by banning sheltering on public property, the challenged ordinances disproportionately affect homeless residents — namely, they prevent homeless residents who can't access BSH from sheltering outdoors, which they must do to sleep and avoid extreme weather conditions. As a result, Boulder's enforcement of the ordinances directly injured the homeless plaintiffs, as they have been ticketed and summoned to appear in municipal court — or credibly fear such enforcement — while sheltering on public property. The ordinances purportedly injured Feet Forward by forcing it as an organization to allocate its resources to respond to the effect of the ordinances. Finally, Boulder allegedly injured the taxpayer plaintiffs by using their tax dollars to enforce the purportedly unconstitutional ordinances.

¶ 11 Hence, Feet Forward claimed that the ordinances violate the Colorado Constitutional rights of homeless residents who cannot

access indoor shelter by (1) violating their right to be free from cruel and unusual punishment; (2) violating their fundamental right to freedom of movement; and (3) depriving them of substantive due process by affirmatively placing them in risk of a state-created danger. The complaint requested the trial court grant relief by

- declaring that the ordinances violate the Colorado Constitution;

- declaring that Boulder has deprived the homeless plaintiffs of their rights;

- entering a permanent injunction prohibiting Boulder from enforcing the ordinances against residents who cannot access indoor shelter; and

- awarding nominal damages and attorney fees.

¶ 12    In response to the complaint, Boulder moved for dismissal under C.R.C.P. 12(b)(5). The trial court granted the motion in part. It dismissed the right to freedom of movement claim because it ruled that such a right does not entail a fundamental right to shelter on public property. And it dismissed the state-created danger claim because the complaint failed to allege that Feet Forward suffered harm from a private person created by Boulder's

affirmative actions. The court also dismissed the cruel and unusual punishment claim as to the "Prohibited Items" ordinance, Boulder Rev. Code § 8-3-21.

¶ 13　Yet the court denied dismissal of the cruel and unusual punishment claim as to the "Camping or Lodging on Property Without Consent" ordinance, Boulder Rev. Code § 5-6-10. The court based its denial on a federal decision from the Ninth Circuit Court of Appeals upholding an injunction against a city's camping ban because the ban violated the Eighth Amendment. However, as the case below proceeded to discovery, the United States Supreme Court in *Grants Pass* overturned that circuit court decision. 603 U.S. at 561. The Supreme Court held that an Oregon city's ban on public camping was not cruel and unusual punishment under the Eighth Amendment because the municipal law punished only a person's conduct and not a person's condition or status. *Id.* at 542-43.

¶ 14　Following *Grants Pass*, the trial court permitted Boulder to file a new motion to dismiss. The trial court then granted the motion on the remaining claim because the court determined that the Colorado Constitution's protections against cruel and unusual

punishment mirror those of the Eighth Amendment as interpreted by *Grants Pass.*

## II.    Analysis

¶ 15    On appeal, Feet Forward contends that the trial court erred by failing to recognize that (1) the Colorado Constitution's protections against cruel and unusual punishment are greater than those of its federal counterpart; (2) the right to freedom of movement includes the right to use public property for sheltering; and (3) the Colorado Constitution's due process protection against state-created dangers extends to Boulder's negligent conduct of exposing homeless residents to the elements.  We perceive no error.

### A.    Standard of Review

#### 1.    Motion to Dismiss

¶ 16    We review de novo a dismissal for failure to state a claim under Rule 12(b)(5), and we apply the same standards as the trial court.  *Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7.  To avoid dismissal under Rule 12(b)(5), a plaintiff must plead sufficient facts that suggest plausible grounds to support a claim for relief.  *Warne v. Hall*, 2016 CO 50, ¶ 24; *Froid v. Zacheis*, 2021 COA 74, ¶ 29.

¶ 17    "We accept all factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff, but we are not required to accept bare legal conclusions as true." *Norton*, ¶ 7. We will uphold a trial court order granting a Rule 12(b)(5) motion only if the plaintiff's factual allegations do not support the claim for relief as a matter of law. *Id.*

### 2.    Colorado Constitutional Challenges

¶ 18    We review the constitutionality of municipal ordinances de novo. *See Dorotik v. Town of Breckenridge*, 2026 COA 20, ¶ 12.

¶ 19    "We review issues of statutory or constitutional interpretation de novo." *People v. Lewis*, 2024 CO 57, ¶ 10. "In interpreting a constitutional provision, our goal is to prevent the evasion of the constitution's legitimate operation and to effectuate the intent of the framers of our constitution and of the people of this state." *People v. Smith*, 2023 CO 40, ¶ 20. "To do so, we start with the plain language of the provision, giving its terms their ordinary and popular meanings." *Id.* "If the language of the provision is clear and unambiguous, then we must enforce it as written, and we need not turn to other tools of construction." *Id.* at ¶ 21.

¶ 20    "Under our doctrine of separation of powers, statutes are entitled to a presumption of constitutionality." *People in Interest of T.B.*, 2021 CO 59, ¶ 25.  This presumption extends to municipal ordinances.  *McCarville v. City of Colorado Springs*, 2013 COA 169, ¶ 16.  "[D]eclaring a statute unconstitutional is one of the gravest duties impressed upon the courts . . . ."  *Rocky Mountain Gun Owners v. Polis*, 2020 CO 66, ¶ 30 (quoting *People v. Graves*, 2016 CO 15, ¶ 9).  Accordingly, "[the] presumption of constitutionality can be overcome only if it is shown that the enactment is unconstitutional beyond a reasonable doubt."  *Id.*

¶ 21    "[S]tate courts are free to interpret their own state constitutions as they wish."  *Id.* at ¶ 34.  It follows that "we have a responsibility to engage in an independent analysis of our own state constitutional provision in resolving a state constitutional question."  *Id.*  Even so, context sometimes calls for us to borrow from federal analysis of the United States Constitution when construing our own constitutional text.  *Id.* at ¶ 37.

¶ 22    Colorado appellate courts "have leaned on federal analysis primarily where the text of the two provisions is identical or substantially similar and where consistency between federal and

state law has been a goal of our own precedent." *Id.* (citations omitted). "That said, even parallel text does not mandate parallel interpretation." *Id.* But we have tended to follow federal jurisprudence when we perceive the Supreme Court's "reasoning to be sound" and "where no party has argued that the Colorado provision calls for a distinct analysis." *Id.* at ¶ 38.

### B. Cruel and Unusual Punishment

¶ 23 Feet Forward contends that Colorado Constitution article II, section 20's protection against cruel and unusual punishment extends further than its federal counterpart, and thus the trial court erred by viewing *Grants Pass* and the Eighth Amendment as instructive. Feet Forward also contends that the ordinances violate the broad protections that section 20 affords by effectively criminalizing residents' status of being involuntarily homeless, as well as by imposing grossly disproportionate punishments and excessive fines. We are unpersuaded.

### 1. Section 20 Doesn't Provide Greater Protection than the Eighth Amendment

¶ 24 The Colorado Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual

12

punishments inflicted." Colo. Const. art. II, § 20. "To decide whether a punishment is cruel and unusual, 'courts must look beyond historical conceptions to "the evolving standards of decency that mark the progress of a maturing society.""" *Sellers v. People*, 2024 CO 64, ¶ 17 (quoting *Graham v. Florida*, 560 U.S. 48, 58 (2010)). This protection is based on "the concept that punishment for a crime should be proportionate to both the offender and the offense." *Id.*

¶ 25 Colorado courts have not previously determined whether the criminalization of sheltering on public lands is cruel and unusual under section 20. Yet the United States Supreme Court's decision in *Grants Pass* addressed an analogous ordinance under the Eighth Amendment. Of course, "we are free to construe the Colorado Constitution to afford greater protections than those recognized by the United States Constitution." *Id.* at ¶ 36 (quoting *Millis v. Bd. of Cnty. Comm'rs*, 626 P.2d 652, 657 (Colo. 1981)). However, the text of section 20 is identical to that of its federal counterpart, the Eighth Amendment. *See Rocky Mountain*, ¶ 37; U.S. Const. amend. VIII; Colo. Const. art. II, § 20. And in *Sellers*, ¶ 36, the Colorado Supreme Court stated that, "[t]o date, . . . we have not interpreted

13

article II, section 20 of our constitution to provide greater protection than the Eighth Amendment."

¶ 26 Nonetheless, Feet Forward points to *Wells-Yates v. People*, 2019 CO 90M, and *Close v. People*, 48 P.3d 528 (Colo. 2002), *abrogated by*, *Wells-Yates*, 2019 CO 90M, for the proposition that the Colorado Supreme Court has held that section 20 provides greater protections than the Eighth Amendment. But we reject this proposition because, while both cases mold Eighth Amendment precedent on proportionality reviews using a Colorado-specific context, neither case holds that section 20 provides greater protections than the Eighth Amendment in the process.

¶ 27 In *Close*, the Colorado Supreme Court held that, under section 20, an abbreviated proportionality review of a sentence is required for each separate sentence imposed under Colorado's crime of violence statute. 48 P.3d at 532-38. In doing so, the supreme court observed that the United States Supreme Court has strongly influenced Colorado case law's approach on proportionality reviews:

- "Our review of Colorado precedent indicates that we have closely followed the United States Supreme Court's proportionality principle; the progression of our

14

proportionality jurisprudence mirrors that of the Supreme Court." *Id.* at 536.

- "[W]e have applied the principles established by the Supreme Court to articulate specific conclusions regarding proportionality reviews in Colorado." *Id.*

- "We have closely followed the United States Supreme Court in developing our own principles to guide proportionality reviews." *Id.* at 538.

¶ 28    Having adopted "the procedural mechanisms for proportionality reviews" from the United States Supreme Court, the Colorado Supreme Court in *Close* then concluded that Colorado "precedent has carved out some Colorado-specific principles for proportionality reviews." *Id.* These specific principles (although later overruled in part by *Wells-Yates*) dictate "that certain Colorado crimes are grave or serious for purposes of proportionality review." *Id.* As a result, when these crimes are involved, a sentencing court may skip part of an abbreviated proportionality review. *Id.*

¶ 29    To be sure, *Close* demonstrates that Colorado precedent has specifically delineated how to apply the procedural mechanism for proportionality reviews. But the supreme court in *Close* still made

15

clear that Colorado has done so by *adopting* United States Supreme Court principles. The court's adoption of federal proportionality review mechanics into a state-specific context doesn't establish that the Colorado Supreme Court meant to provide broader protection under section 20. Rather, the *Close* court treated section 20 and the Eighth Amendment as substantively coextensive while applying Colorado-specific principles to the proportionality review procedure.

¶ 30　Similarly, in *Wells-Yates* the Colorado Supreme Court held that, "*in conformity with federal precedent,* Colorado courts conducting an extended proportionality review should compare the sentence at issue to (1) sentences for other crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions." *Wells-Yates*, ¶ 17 (emphasis added).

¶ 31　Feet Forward argues that *Wells-Yates* articulates greater protection under section 20 because Colorado courts "must consider 'the evolving standards of decency,'" which, Feet Foward argues, federal courts do not consider. But that doesn't accurately read the opinion. In reaching its conclusion, the Colorado Supreme Court said, "The [United States] Supreme Court has reasoned that whether a sentence contravenes the Eighth Amendment requires

16

courts to 'look beyond historical conceptions to "the evolving standards of decency that mark the progress of a maturing society."'" *Id.* at ¶ 46 (quoting *Graham*, 560 U.S. at 58). It then instructed that Colorado courts must consider "statutory amendments . . . as . . . indicia of the evolving standards of decency" when conducting an extended proportionality review involving a drug offense. *Id.* at ¶ 47. But the "evolving standards of decency" language Feet Forward relies on originates with the Supreme Court's Eighth Amendment analysis, not section 20. *Graham*, 560 U.S. at 58 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).

¶ 32 Feet Forward also argues that *Wells-Yates* recognizes greater protections under section 20 by defining "per se grave or serious" crimes. But we don't agree with this reading. Following the federal approach, a court "should consider 'the harm caused or threatened to the victim or society,' as well as 'the culpability of the offender.'" *Wells-Yates*, ¶ 12 (quoting *Solem v. Helm*, 463 U.S. 277, 292 (1983)). But under Colorado's approach, a court can skip that consideration when a crime has been designated as per se grave or serious.

17

¶ 33 Accordingly, we don't see any *substantive* differences in Colorado precedent between the Eighth Amendment's protections and section 20's protections. *Wells-Yates* instructs that under section 20, courts must consider Colorado's specific standards, but that courts must do so *in conformity with federal precedent. Id.* at ¶¶ 17, 47. Again, the requirement that Colorado courts use state context to apply federal doctrine doesn't change the fact that the supreme court has maintained conformity between the substantive standards for state and federal proportionality reviews. And such substantive consistency for proportionality reviews implies that section 20's protections are congruent with — not divergent from — the overall protections against cruel and unusual punishment embedded in the Eighth Amendment. *See Rocky Mountain*, ¶ 37.

¶ 34 Even so, Feet Forward also contends that Colorado's unique history of outdoor survival warrants interpreting section 20 as protecting the use of tents. In support, Feet Forward cites *People v. Schafer*, where the Colorado Supreme Court relied on the notion that "[t]ents have long served humans as a form of habitation in Colorado and the West." 946 P.2d 938, 943 (Colo. 1997).

¶ 35    However, the supreme court in *Schafer* applied that notion to the Fourteenth Amendment's reasonable expectation of privacy, extending that protection to a tent that police found on publicly accessible land that permitted camping. *Id.* at 942-45. Indeed, *Schafer* doesn't address section 20 at all, and the historical facts relating to expectations of privacy have no bearing on the legal principles at issue here. In other words, *Schafer* doesn't rebut *Sellers*'s observation — at least as of its writing — that the protections afforded by section 20 are not greater than those of the Eighth Amendment. *See Sellers*, ¶ 36.

¶ 36    So we conclude that the Colorado Supreme Court has not interpreted section 20 as providing greater protections than those afforded by the Eighth Amendment. And Feet Forward provides us with no sound basis upon which we could extend those protections. It follows, then, that it is appropriate in this context for us — like the trial court — to borrow from the United States Supreme Court's Eighth Amendment analysis in *Grants Pass* to the extent that its reasoning is sound and the question before us doesn't call for distinct analysis. *See Rocky Mountain*, ¶ 38.

19

## 2. The Ordinances Are Not Cruel and Unusual Under Section 20

¶ 37    In *Grants Pass*, the United States Supreme Court addressed a challenge to municipal laws in Oregon as cruel and unusual under the Eighth Amendment. 603 U.S. at 525. The three relevant municipal laws restricted sleeping on public property, camping on public property, and camping or overnight parking in city parks. *Id.* at 537. The penalties for violating the ordinances escalated in steps: first civil fines, then temporary exclusion from public property, and finally a maximum criminal punishment of "30 days in prison and a $1,250 fine." *Id.*

¶ 38    According to the Supreme Court, the Eighth Amendment focuses on what "method or kind of punishment" a government may impose, not on whether a government may criminalize a type of behavior. *Id.* at 542-43 (quoting *Powell v. Texas*, 392 U.S. 514, 531-32 (1968) (plurality opinion)). Thus, the Supreme Court held that the kind of punishment imposed by the three municipal laws wasn't cruel because they were not designed to cause "terror, pain, or disgrace." *Id.* at 543 (quoting *Bucklew v. Precythe*, 587 U.S. 119, 130 (2019)). It further held that the municipal laws were not

20

unusual because fines and incarceration remain among the usual kinds of punishments employed across the country. *Id.* And although the Eighth Amendment precludes criminalization of a person's status (rather than their actions or conduct), the Supreme Court determined that status was not implicated by the municipal laws because they forbade only *actions*, such as occupying public property to maintain a temporary place to reside. *Id.* at 546-47 ("Under the city's laws, it makes no difference whether the charged defendant is homeless, a backpacker on vacation passing through town, or a student who abandons his dorm room to camp out in protest on the lawn of a municipal building.").

¶ 39     Nonetheless, on this point, Feet Forward argues that *Grants Pass* is logically unsound because criminalizing involuntary conditions or a person's status remains a cruel and unusual punishment — a principle that *Grants Pass* explicitly didn't overturn. According to Feet Forward, this makes *Grants Pass* flawed because the Supreme Court "failed to acknowledge the reality that sometimes a person's conduct cannot be isolated from their status."

¶ 40    It's true that the line between status and conduct can blur. But as Feet Forward points out, *Grants Pass* reaffirms that, in principle, the difference between conduct and status remains a valid Eighth Amendment distinction. *See id.* at 546 ("[A] [s]tate may not criminalize the 'status' of being an addict." (quoting *Robinson v. California*, 370 U.S. 660, 666 (1962)); *Robinson*, 370 U.S. at 666-67 (holding that it is cruel and unusual to criminalize the "status" of narcotic addiction); *Powell*, 392 U.S. at 532-35 (holding that criminalization of being in public while drunk was not cruel and unusual to chronic alcoholics because it punished the act of drinking to drunkenness while in public, not being an alcoholic); *see also People v. Giles*, 662 P.2d 1073, 1077 (Colo. 1983) (holding that criminalization of escape from a facility was not cruel and unusual because the punishment applied to "a distinct crime" and not "an illness or infirmity beyond the control of the defendant"); *Arnold v. City & County of Denver*, 464 P.2d 515, 516-17 (Colo. 1970) (noting that prohibition on vagrancy would constitute cruel and unusual punishment "[i]f condition or status were all that [was] involved in . . . the ordinance under consideration"). Where Feet Forward departs from *Grants Pass*, then, is with the United States

22

Supreme Court's holding that the specific conduct of sheltering on public grounds is an activity distinguishable from the status of being involuntarily homeless.

¶ 41 To be sure, we appreciate the tension in differentiating between a person's conduct and status when their conduct involves basic activities for survival due to an involuntary status. That said, there is no precedent establishing that a person should be treated under our constitution as if they have a medical condition — effectively "an illness or infirmity" — based on their inability to access or afford indoor shelter. *Giles*, 662 P.2d at 1077.

¶ 42 Further, even viewing the complaint in the light most favorable to Feet Forward, as we must, *see Norton*, ¶ 7, we can't conclude that the status of homelessness is involuntary in all instances. To the contrary, the complaint reveals that homelessness in Boulder is driven by a complex web of factors and individual circumstances. These include economic conditions affecting the entire community, such as housing supply, single-family home prices, rent, income, dislocation due to wildfires, and available shelter beds. And they include individual circumstances such as mental health factors, preferences, comfort level, work schedules, relationship status, and

having animal companions.  And as in *Grants Pass*, for the ordinances challenged in this case, "it makes no difference whether the charged defendant is homeless, a backpacker on vacation passing through town, or a student who abandons his dorm room to camp out in protest on the lawn of a municipal building."  603 U.S. at 546.

¶ 43    The majority and dissenting opinions in *Grants Pass* ably show that reasonable minds can disagree on this point of status versus conduct.  *See id.* at 557-60; *id.* at 581-87 (Sotomayor, J., dissenting).  But such disagreement doesn't establish that the majority opinion in *Grants Pass* was flawed.  Instead, it demonstrates that the issues related to homelessness have levels of complexity and nuance that raise the type of questions better "left to be resolved through 'productive' democratic 'dialogue' and 'experimentation,'" rather than addressed through "a rigid constitutional mold."  *Id.* at 551 (majority opinion) (quoting *Powell*, 392 U.S. at 537).  Given all this, we cannot conclude on this record that the ordinances criminalize status rather than conduct — even if that conduct is difficult to avoid under the totality of the circumstances.  *See id.* at 548-49, 558-59.

¶ 44    We also conclude that *Grants Pass* is instructive on the remaining questions here.  The types of punishments imposed by the ordinances — fines and incarceration — are not cruel because they don't terrorize, disgrace, or cause pain to those charged.  *See id.* at 543.  And they are the types of punishments usually employed across the country for similar offenses, so they are not unusual.  *See id.*  Therefore, accepting the allegations in the complaint as true, Feet Forward fails to state a claim for relief that the ordinances are cruel and unusual under section 20.  *See Rocky Mountain,* ¶ 30.

¶ 45    Lastly, Feet Forward further contends that the ordinances are unconstitutional because they impose a grossly disproportionate punishment and excessive fines.  Feet Forward asserts that it stated a claim "by noting the types of conduct criminalized by the ordinances" in its complaint.  We disagree.

¶ 46    "A penalty is constitutionally excessive if it is grossly disproportionate to the gravity of the underlying offense."  *People ex rel. Rein v. Jacobs,* 2020 CO 50, ¶ 60.  Feet Forward's complaint didn't seek a declaration of the plaintiffs' rights for having been fined or threatened to be fined.  *Cf. Boulder Cnty. Apartment Ass'n*

*v. City of Boulder*, 97 P.3d 332, 337-38 (Colo. App. 2004) (addressing landlords' constitutional challenge to fines for zoning ordinance violations as excessive because the landlords complained of "having been fined or being subject to the threat of a fine" and sought "a declaration of their rights regarding the validity of [the] ordinances"). We don't see a claim in the complaint challenging the ordinances' punishments as grossly disproportionate.

¶ 47 Even if we assume that the plaintiffs' references to punishment properly stated a claim for relief, at best that claim would present an as-applied constitutional challenge for the homeless plaintiffs. The key considerations for such a challenge are "the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question." *People v. Ray*, 2025 CO 42M, ¶ 185 (quoting *Graham*, 560 U.S. at 67).

¶ 48 Although the complaint alleged that two of the homeless plaintiffs have been ticketed and summoned, none of the homeless plaintiffs were purportedly sentenced or fined. Therefore, we agree

with the trial court that this claim isn't ripe because there are currently no punishments in question to consider.[5]  *See id.*

### C.    Right to Freedom of Movement

¶ 49    Feet Forward contends that the ordinances violate homeless residents' right to freedom of movement and to use public spaces under the Colorado Constitution.  We disagree.

#### 1.    Applicable Law

¶ 50    Colorado Constitution article II, section 3 states, "All persons have certain natural, essential and inalienable rights, among which

---

[5] In "conformity with federal law," the Colorado Supreme Court has held that a state proportionality review for excessive fines must consider a person's ability to pay.  *Colo. Dep't of Lab. & Emp. v. Dami Hosp., LLC*, 2019 CO 47M, ¶ 29.  Thus, for the claim of excessive fines specifically, we note that Feet Forward's complaint — besides alleging that the homeless plaintiffs are homeless — provides no allegations on which to consider their ability to pay (i.e., the only relevant information provided is that one homeless plaintiff is generally alleged to be currently employed).  And it isn't clear what allegations would be sufficient in this context without the issuance of actual fines, as the potential fines are indeterminate within a range of up to a *maximum* of $2,650, not mandated set amounts.  *Cf. Boulder Cnty. Apartment Ass'n v. City of Boulder*, 97 P.3d 332, 338 (Colo. App. 2004) (holding that a statutory fine was not excessive for penalizing landlords for over-occupancy violations because the fine was for "*up to* $2,000" and required the court to consider certain factors when determining the amount).

may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness." The Colorado Supreme Court has held that such protected inalienable rights include the fundamental "rights of freedom of movement and to use the public streets and facilities *in a manner that does not interfere with the liberty of others.*" *People in Interest of J.M.*, 768 P.2d 219, 221 (Colo. 1989) (emphasis added).

¶ 51 "Because these liberty interests are fundamental, the [government] must establish a compelling interest before it may curtail the exercise of such rights . . . ." *Id.* However, "[a]n ordinance which does not infringe upon a fundamental right . . . is generally measured by the rational[] [basis] standard." *Id.* at 223. Under this standard, "the [government] need only establish a

legitimate purpose and a rational relation between the means employed and the goals to be obtained."[6]  *Id.*

## 2. Sheltering on Public Land Is Not Part of the Fundamental Right of Freedom of Movement

¶ 52    Feet Forward argues that the fundamental right of freedom of movement under *J.M.* necessarily includes a right to a safe place on public property to sleep, lie down, and eat when an individual has nowhere else to do so.  This has been established, Feet Foward claims, by federal and out-of-state cases, such as *Phillips v. City of Cincinnati*, 479 F. Supp. 3d 611 (S.D. Ohio 2020), and *Pottinger v. Miami*, 810 F. Supp. 1551 (S.D. Fla. 1992), among others.  And because the ordinances here criminalize this allegedly fundamental right, Feet Forward asserts that the ordinances must further a

---

[6] Feet Forward asserts that the trial court incorrectly applied the "reasonable exercise of police power" test.  That test is most commonly used to evaluate challenges under Colorado's counterpart to the Second Amendment, Colo. Const. art. II, § 13; *see Rocky Mountain Gun Owners v. Hickenlooper*, 2016 COA 45M, ¶¶ 13-16.  While the trial court did use the phrase "reasonable exercise," we don't perceive it as having applied the test sharing that name.  The rest of the court's order makes clear it was correctly evaluating the ordinances under the rational basis test.

compelling government interest to be constitutional, which it asserts they do not.

¶ 53     Yet section 3 doesn't state that there is a fundamental right to shelter on public land to sleep and rest.[7]  And *J.M.* doesn't say that either.  Instead, *J.M.* simply holds that citizens have rights to "use the public streets and facilities."  But these rights are specifically limited to activities done "in a manner that does not interfere with the liberty of others."  768 P.2d at 221.  A resident occupying public property to shelter for sleep and rest necessarily interferes with every other resident's ability to traverse, use, and enjoy that same space.  Consequently, we can't infer that section 3 contains a fundamental right to shelter on public property contrary to the limiting language of *J.M.*

¶ 54     The cases Feet Forward cites don't change this conclusion. None of the cases are grounded in Colorado precedent.  For example, Feet Forward relies on *Phillips* and *Pottinger*.  *Phillips*

---

[7] Colorado already regulates camping on public land, albeit recreationally.  *See* §§ 33-10-101 to -118, C.R.S. 2025.  We are unaware of any legal challenges to these statutes based on their implicating a fundamental right to shelter on public land for sleep and rest.

merely cites *Pottinger*'s reasoning in passing without expanding on it. *See Phillips*, 479 F. Supp. 3d at 649-53. And ultimately the *Phillips* court denied a motion to dismiss based on the allegations in the complaint: It did not conclude that the federal right to travel includes a right to camp. For its part, *Pottinger* is distinguishable from the situation here because the ordinances in that case criminalized all "life-sustaining activities." *Pottinger*, 810 F. Supp. at 1561. It was not limited to banning camping or tents. *Id.*

¶ 55    Moreover, *Phillips* and *Pottinger* are federal district court cases. As far as we can discern, no federal circuit — including the Eleventh Circuit, where *Pottinger* arose — has adopted this right-to-travel reasoning as precedential in the circumstances at issue here. *See Peery v. City of Miami*, 977 F.3d 1061, 1071 (11th Cir. 2020) (holding that the liberty interest for a person to be on a city's public lands is neither "fundamental nor limitless," such that there is no fundamental right to use public parks under any condition and at any time (citation omitted)); *see also Aitken v. City of Aberdeen*, 393 F. Supp. 3d 1075, 1084 (W.D. Wash. 2019) ("None, however, have followed *Pottinger*'s logic to enjoin an ordinance prohibiting camping or other conduct that homeless people often engage in."). The

31

remaining federal district court cases Feet Forward cites from other jurisdictions fare no better.

¶ 56     Therefore, we conclude that section 3 does not contain a fundamental right to maintain a place on public property to sleep, lie down, and eat when an individual has nowhere else to do so.

### 3.     The Ordinances Have a Rational Basis

¶ 57     With no fundamental right at issue, we review whether the ordinances violate Feet Forward's liberty interests using the rational basis standard. *See J.M.*, 768 P.2d at 223. To satisfy that standard, the government must "only establish a legitimate purpose and a rational relation between the means employed and the goals to be obtained." *Id.* An ordinance "is within the state's police power if it is reasonably related to the public health, safety, and welfare." *People v. Zinn*, 843 P.2d 1351, 1354 (Colo. 1993). When evaluating the constitutionality of an ordinance, we are mindful that the municipality "has broad discretion to enact measures for the protection of the public health, safety[,] and welfare, and we may not substitute our judgment for that of the legislature as to the wisdom of the legislative choice." *Id.*

¶ 58    The ordinances satisfy this standard.  The record demonstrates, as the trial court recognized, that Boulder's claimed reasonable basis for the ordinances was to ensure that all citizens have access to public property and to reduce public health concerns.  These public health concerns included potential health problems that could arise when residents sheltered on public property without connections to Boulder's water, sewer, and trash collection systems.  *See Grants Pass*, 603 U.S. at 528-32 (discussing the positive and negative aspects of encampments erected by homeless individuals across cities nationwide, including challenges with increased health risks and crime).

¶ 59    For its part, Feet Forward doesn't dispute that the ordinances have a rational relationship to achieving these public access and public health goals.  *See J.M.*, 768 P.2d at 223.  Nor does it argue that these aren't legitimate purposes.  Indeed, Feet Forward doesn't advance a rational basis argument.  Instead, it anchors its argument primarily in the fundamental rights context by

challenging the existence of a compelling government interest.[8] In fact, Feet Forward's complaint implicitly acknowledges that the ordinances are reasonably related to achieving Boulder's goals because the complaint alleges that Boulder carefully designed the ordinances to distinguish between recreational and sheltering activities.

¶ 60     However, given that we conclude that Feet Forward doesn't mount a challenge to a fundamental right, rational basis review controls and Feet Forward's compelling government interest argument must fail. Accordingly, even taking the allegations in the complaint as true and viewing them in the light most favorable to Feet Forward, Feet Forward can't disprove that the ordinances are rationally related to Boulder's stated goals of ensuring public access and protecting public health. *See Norton,* ¶ 7; *Rocky Mountain,* ¶ 30; *Zinn,* 843 P.2d at 1353. Feet Forward's complaint therefore fails to state a claim for relief under article II, section 3.

---

[8] Feet Forward also attempts to import the reasonable exercise of police power test into its argument. But we reject that attempt above. *See supra* note 6.

## D. State-Created Danger Doctrine

¶ 61     Feet Forward contends that the ordinances violate Colorado's due process protection against state-created danger. Feet Forward argues that the trial court should have concluded that Feet Forward was entitled to greater protections under Colorado Constitution article II, section 25 than under the Fourteenth Amendment. We are not persuaded.

### 1. Applicable Law

¶ 62     Section 25 states that "[n]o person shall be deprived of life, liberty or property, without due process of law." Colo. Const. art. II, § 25.

¶ 63     The Colorado Supreme Court addressed the state-created danger doctrine in a 42 U.S.C. § 1983 challenge based on the Fourteenth Amendment in *Henderson*, 931 P.2d 1150. "[T]he general rule is that state actors are liable under the Due Process Clause only for their own acts and not for the violent acts of third parties." *Id.* at 1155. In *Henderson*, the supreme court held that in limited circumstances the state has an affirmative duty to protect citizens from a private person inflicting a constitutional injury. *Id.*

Those circumstances are "(1) the special relationship exception; and (2) the danger creation exception." *Id.*

¶ 64    For the state-created danger exception, the state may be "liable under § 1983 for failing to protect an individual from harm inflicted by a third party where the [s]tate has created the danger that ultimately causes the harm or the [s]tate has increased the individual's vulnerability to the harm." *Id.* at 1156. This exception requires "more than the creation of a dangerous environment in which harm occurs or the creation of an opportunity for a third party to cause the harm." *Id.* at 1159.

### 2.    The Ordinances Don't Create a Danger of Harm from a Private Person

¶ 65    Feet Forward argues that *Henderson* merely addressed the minimum protections provided by the Fourteenth Amendment. Feet Forward thus claims that, because Colorado has previously broadened certain due process protections under section 25 beyond those offered by its federal counterpart, the state-created danger doctrine in Colorado must similarly provide greater protections than those afforded by the Fourteenth Amendment.

¶ 66    To that end, Feet Forward cites *Leake v. Cain*, in which the court held that public officials can be liable for negligence. 720 P.2d 152, 160 (Colo. 1986) ("[F]or purposes of determining liability in a negligence action, the duty of a public entity shall be determined in the same manner as if it were a private party."), *superseded by statute*, Ch. 166, sec. 6, § 24-10-106.5, 1986 Colo. Sess. Laws 876-77, *as recognized in*, *Aztec Mins. Corp. v. Romer*, 940 P.2d 1025, 1031 (Colo. App. 1996). Under *Leake*, Feet Forward argues we should adopt ordinary tort law principles into the state-created danger doctrine.

¶ 67    But we must reject Feet Forward's proposal. The *Henderson* court made clear that "[t]he constitutional guarantee of due process does not convert all common law duties owed by government actors into constitutional torts." 931 P.2d at 1155. And although *Henderson* addressed the Fourteenth Amendment, in doing so it conducted an in-depth analysis to address a circuit split, where "the Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits have refused to impose a duty to protect unless the [s]tate has affirmatively placed a person in a situation of known danger that the person would not have faced in the absence of the [s]tate's

37

involvement." *Id.* at 1158. The supreme court concluded that "[t]hese circuits require more than the creation of a dangerous environment in which harm occurs or the creation of an opportunity for a third party to cause the harm." *Id.* at 1159. The supreme court therefore held that the context of the case and the "general analysis of the law on the subject[] support adoption of th[is] narrow construction of the danger creation exception." *Id.*

¶ 68 Given the extensive review and *general analysis of the law on the subject,* we have no reason to think the supreme court intended to create distinct protections under section 25 specific to the state-created danger doctrine. And Feet Forward offers no logical basis on which we should assume that simply because our constitution *can* provide greater protections than the Fourteenth Amendment, that means it *must* do so in every instance, or even in this instance. Indeed, when analyzing the state-created danger doctrine, the *Henderson* court warned,

> As we venture into this area of the law, we are mindful of the [United States] Supreme Court's admonition that "guideposts for responsible decisionmaking in this uncharted area are scarce and open ended. . . . The doctrine of judicial self-restraint requires us to exercise

> the utmost care whenever we are asked to
> break new ground in this field."

*Id.* at 1156 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).

¶ 69     We are likewise mindful of the need to exercise the utmost care and follow the same path already trodden by the Colorado Supreme Court.  Lacking a solid footing on which to extend the state-created danger doctrine under section 25 further afield, we decline the invitation to create a novel constitutional tort.  *See id.*  And similarly, even though *Henderson* involved a § 1983 challenge under the Fourteenth Amendment, we deem its reasoning applicable here.

¶ 70     Turning to the application of the state-created danger doctrine under *Henderson* then, Feet Forward further asserts that it sufficiently stated a state-created danger claim under either a state-tort theory or the standard laid out by *Henderson*.  Namely, Feet Forward asserts that the enforcement of the ordinances either negligently or affirmatively placed homeless residents in danger by prohibiting them from protecting themselves from the elements.

¶ 71    Here, however, there is no "injury inflicted by a private person" alleged in the complaint. *Id.* at 1155. The only purported injury inflicted is that of exposure to the elements, and the infliction of that injury is a consequence of Boulder's alleged enforcement of the ordinances. Without a harm from a private person, this claim amounts to a mere allegation of "the creation of a dangerous environment in which harm occurs," which *Henderson* has deemed insufficient to invoke the state-created danger doctrine. *Id.* at 1159. And the multiple cases cited by Feet Forward from outside jurisdictions for the proposition that exposure to weather can be a state-created danger lack sufficient weight to convince us to cast aside *Henderson*'s reasoning. Therefore, we conclude that the complaint fails to state a claim for relief under this theory as well.[9]

### III.    Disposition

¶ 72    The judgment of dismissal is affirmed.

JUDGE FOX and JUDGE SULLIVAN concur.

---

[9] Because all of Feet Forward's constitutional claims fail, we need not address Boulder's contention that Chief Herold cannot be liable under section 13-21-131, C.R.S. 2025, because she allegedly perceived the ordinances as constitutional when she enforced them.

40